NEW-YORK, May, 1818.

PLATT
v.
JOHNSON.

——◦※◦——

## PLATT *against* JOHNSON and ROOT.

THIS was an action on the case for obstructing the waters of the *Cincinnatus Creek*, in their ancient course across the defendant's land, to the plaintiff's grist and saw mills, erected on his land lower down the stream, whereby the waters of the creek were withheld from the plaintiff's as that a grant may be presumed) gain an exclusive right, and cannot maintain an action against a person erecting a mill and dam above his, by which the water is, in part, diverted, and he is, in some degree, injured.

A person erecting a mill and dam upon a stream of water, does not, by the mere prior occupation, unaccompanied with such a length of time

mills, and the plaintiff deprived of the profits of his mills. The cause was tried before Mr. Ch. J. *Thompson*, at the *Oneida* circuit, in *June*, 1817.

The plaintiff, being possessed of land lying on both sides of the creek, in 1797 erected a saw mill and dam on the creek; in 1805 and 1806 he erected a grist mill near the other, the dam answering for both mills; and in 1810 he built a new grist mill at a short distance below the first mills; all which mills had been in use from the time of their first erection. In 1809, the proprietors of the farm, afterwards held by the defendants, built a dam across the creek, about sixty rods above the plaintiff's dam, with a fulling mill, and in 1812 erected a carding machine near to it. The defendants purchased their mills, and entered into possession about two years before the trial. By means of their dam, the water of the creek was detained while the pond of the defendants was filling, and in very dry seasons, especially in 1816, the plaintiff had, occasionally, to wait for the water, until the defendants had raised a pond sufficient to turn their mills; and in one instance, when the water was uncommonly low, the gate of the defendants was kept shut for nearly three days, during which time the plaintiff's mill was stopped; on other occasions it was stopped for a less time, and the plaintiff's customers had been obliged to carry their grain to other mills. The water, after having been used by the defendants, was turned immediately into the natural channel, about sixty rods above the plaintiff's mills; and the defendants had in no instance shut down their gates, except for the purpose of raising a pond for the use of their works, which required a greater quantity of water than the plaintiff's, at whose mills the fall of water was so great, that the usual quantity in the stream, at ordinary seasons, would carry his mills at good speed, and in dry seasons, the grist-mill would grind from ten to twenty bushels in a day. It appeared that the plaintiff had taken some measures to turn away the waste water from the defendants' dam into a channel for the use of his mills. It also appeared in evidence, on the part of the defendants, that there had been little or no complaint on the part of the plaintiff, until 1816, which was a dryer season than had ever been known before; that

the plaintiff might so alter his dam as to save all the waste water, that the plaintiff's mills were turned with much more force and speed, when the defendants raised their gates, by reason of the increased quantity of water, and that when his grist mill had a full head of water it would grind sixty or seventy bushels a day.

A verdict was found for the plaintiff, for 25 dollars, which, by consent, was made subject to the opinion of the court, on a case containing the facts above stated.

*Sill*, for the plaintiff. The parties ought to use the water of this creek so as not to injure each other. The maxim *sic utere tuo, ut alienum non lœdas*, applies. Strictly and technically, this may not be *diverting* a natural water course ; but it is, substantially, that case ; for the defendants, by erecting their dam, have detained the water from the use of the plaintiff, for several days at a time. Suppose a natural stream used by the public for watering cattle : would the defendants be allowed, by erecting a dam, to detain the water for his particular use, for several months? It may be said, perhaps, that the defendants could not make use of their mill, unless they filled their mill pond, so as to gain a sufficient head of water for the purposes of the mill. But this is no answer to the plaintiff; for it was the folly of the defendants to erect a mill where there was no *natural* mill seat, or fall of water. The plaintiff, having erected his mills first, is entitled to a preference in the use of the water. Prior occupancy gives a superior title. The general principle on this subject is well laid down by *Blackstone*. (2 *Bl. Com.* 402, 403.) "If a stream," says he, "be unoccupied, I may erect a mill thereon, and detain the water ; yet not so as to injure my neighbour's prior mill, or his meadow : for he hath, by the first occupancy, acquired a property in the current." The same principle is adopted by *Woodeson.* (2 *Woodes. Lect.* 391.) The general doctrine of these elementary writers is supported by adjudged cases. (*Brown* v. *Best*, 1 *Wils.* 174. 15 *Viner. Abr.* 399. *Mill.* (C.) *Cox* v. *Matthews*, 1 *Vent.* 237. *Palms* v. *Heblethwait*, *Skin.* 65. 175. *Duncomb* v. *Randall*, *Hetley*, 32. 34. *Bealy* v. *Shaw*, 6 *East*, 208. 16 *Viner. Abr.* 25—29. *Nuisance*, (G.)

s. 7, 8, 9. *Id.* (H.) pl. 20.) The case of *Bealey* v. *Shaw* is in point. The court of king's bench there held, that the owner of land through which a river runs, could not, by enlarging the channel through which the water had been used to flow before any appropriation of it by another, divert more of the water, to the prejudice of another person lower down on the river, who had, before the channel was enlarged, appropriated to himself the surplus water which did not escape by the former channel. So, in *Sackrider* v. *Beers*, (10 *Johns. Rep.* 24.) this court decided, that though the owner of land on a public river had a right to erect a mill on his land, yet he must so construct his dam, and so use the water, as not to injure his neighbour below, in the enjoyment of the same water, according to its natural course.

*Talcot*, contra. A purchaser of land over which a stream of water runs, acquires a right to use the water in a reasonable manner, for the ordinary purposes of mills or machinery, there being no ancient right or prescription in the case. And if, in the reasonable use of the water, for such ordinary purposes, the owner of land below suffers any damage, it is *damnum absque injuria*. Baron *Comyns* lays down the rule that an action on the case does not lie for a reasonable use of one's right, though it be to the annoyance of another. (1 *Comyns' Dig.* 305. *Action on the case for a nuisance.* (C.) ) And he puts the case of a man building a house, who digs his cellar on his own soil, by means of which a newly-built house on the adjoining land falls down. (1 *Sid.* 167. 2 *Roll.* 565. 1. 5 ) The plaintiff is bound to prove an exclusive right to the use of the water, by such evidence as affords the presumption of a grant. It is not enough to show merely a prior occupancy. It is so laid down in *Bealy* v. *Shaw*, (6 *East*, 208.) and in *Palmer* v. *Mulligan*, (3 *Caines' Rep.* 307.) The plaintiff has shown a possession for no more than eight or ten years. In regard to the new grist mill, the defendants are, in fact, the prior occupants.

There is no difference, in respect to the rights of these parties, between an artificial and a natural mill seat. The plaintiff, from the natural elevation of his ground, has a superior advantage; but there is no reason why the defendants

may not, by artificial means, gain the use of the water, for the purpose of machinery.

Again ; the damages are too small to afford a ground for this action. There must be a *damnum et injuria*. Where the act, of itself, is *injuria*, though the damages be trifling, yet an action lies ; but if the act is not, of itself, injurious, the damages must be great and serious to furnish a cause of action. The mere fact that the plaintiff's mill pond is not so well supplied with water as it was before the defendants erected their dam, is not sufficient to support this action. Thus *Comyns* mentions a case : If a man use water in his own land out of a water course running though his land to the pond of B., whereby B.'s pond is not so full ; if he does not divert the water course, an action does not lie. Now, in this case, it is not pretended that the water course has been diverted. In *Bealy* v. *Shaw*, not merely a portion of the water, but the whole stream was actually diverted. But the case of *Palmer* v. *Mulligan*, (3 *Caines*, 307.) is strong and conclusive against the plaintiff.

*Sill*, in reply, insisted, that there was no such principle in the law, that the prior occupancy of a stream of water must be for so long a period of time as to afford the presumption of a grant ; nor did it make any difference whether one mill was erected above or below the other. It was absolutely necessary to make an artificial mill seat. In *Palmer* v. *Mulligan* there was a motion for a new trial, and the damages were very small ; and two of the judges, (*Kent*, Ch. J. and *Thompson*, J.) dissented. If a jury find damages, however small may be the amount, if they are not merely nominal, the court are bound to give judgment for the plaintiff.

THOMPSON, Ch. J. delivered the opinion of the court. The question involved in the decision of this case may, perhaps, be considered as one of the first impression. I cannot persuade myself, however, that the claim set up by the plaintiff can be sustained upon any principles of law recognized in our courts. The principle sought to be established is, that a previous occupancy of land upon a stream of water,

and an appropriation of the water to the purposes of a mill, gives such a right to the stream, in its whole extent above, as to control the use of the water, so as to prevent any subsequent occupant from using or detaining the water, to the least injury or prejudice of the first occupant. Unless the principle thus broadly stated can be supported, the plaintiff must fail in the present action; for there is no colour for charging the defendants with having diverted the natural course of the stream, or unnecessarily wasting the water, or wantonly detaining it longer than was reasonable and necessary for their own machinery and water works; nor is there any pretence that the plaintiff had been so long in the previous use and enjoyment of this stream of water, as to afford the presumption of a grant of the same beyond the bounds of his own land. The plaintiff's right, therefore, if any legal right exists, must grow out of the mere fact of his having first erected his mill. To give such an extension to the doctrine of occupancy would be dangerous and pernicious in its consequences. The elements being for general and public use, and the benefit of them appropriated to individuals, by occupancy only, this occupancy must be regulated and guarded, with a view to the individual rights of all who may have an interest in their enjoyment; and the maxim *sic utere tuo, ut alienum non lædas,* must be taken and construed with an eye to the natural rights of all. Although some conflict may be produced in the use and enjoyment of such rights, it cannot be considered, in judgment of law, an infringement of the right. If it becomes less useful to one, in consequence of the enjoyment by another, it is by accident, and because it is dependent on the exercise of the equal rights of others. Many general and public considerations might be resorted to, to enforce and establish this doctrine. But I think this question falls within the principles fully recognized by this court in the case of *Palmer* v. *Mulligan.* (3 *Caines,* 313.) Though there was a difference of opinion on the bench, as to the result of the motion in that case, yet this difference did not, in any measure, turn on the question presented by this case. *Spencer,* J. said, the act of erecting a dam by the defendant was a lawful act; and though, in its consequences, slightly injurious to the plaintiffs,

they were remediless : it was *damnum absque injuria.* The
erection of dams on all rivers is injurious, in some degree,
to those who have mills on the same streams below, in *with-*
*holding* the water ; yet this had never been supposed to af-
ford a ground of action. *Livingston,* J. said, each one had an
equal right to build his mill, and the enjoyment of it ought
not to be restrained, because of some trifling inconvenience
to the other ; and he utterly rejected the doctrine, that the
person erecting the first mill thereby acquired any superior
rights. Were the law, he observes, to regard little incon-
veniences of this nature, he who could first build a dam or
mill on any public river would acquire an exclusive right, at
least for some distance ; for a second dam could not be
built, unless at a considerable distance, without producing
some mischief or detriment to the owner of the first. Here
the principle on which the plaintiff rests is directly met,
and treated as leading to extravagant consequences, altoge-
ther inadmissible.

Although I differed from the opinion of the court in
that case, it was upon the ground that the plaintiff had ac-
quired a superior right by a prior enjoyment of the water,
in a particular manner, for forty years, which was suffi-
cient to raise the presumption of a grant ; and the chief
justice, who also dissented from the majority of the court,
rejected the doctrine set up by the plaintiff in this case.
Many cases, said he, may be supposed, which would be *dam-
num absque injuria :* such as the insensible evaporation and
decrease of the water by dams, or the occasional increase
or decrease of the velocity of the current, and the *quantum*
of water below. Many such circumstances may be inevita-
ble from the establishment of one dam above another upon
the same stream. I have been thus particular in noticing
the several opinions in this case, because, if the principles
which seem there to be taken for granted by the whole
court, are well founded, they are in direct hostility to the
plaintiff's right of action. There is no ground, in point of
fact, if that could make any difference in the principle, for
alleging that there was no *natural* mill seat or fall, where
the defendants' works are erected. There is enough for
every purpose for which the defendants have, and had, a

right to use the water. The court are, accordingly, of opinion, that the defendants are entitled to judgment.

Judgment for the defendants.