Harper, J.
The case is not free from difficulty and apparent hardship, but from the best view we can take of authorities and the reason of the law, we are of opinion with the plaintiff, and that his motion must be granted. There arc some dicta in the English books which seem to favor the construction of the law which the presiding judge has given ; such as that from 2 Black. Com. 403, that “ if a stream be unoccupied, I may erect a mill thereon, and detain the water, yet not so as to injure my neighbor’s prior mill, or his meadow, for he hath, by his prior occupancy, acquired a property in the current.” But these dicta are all, perhaps, susceptible of a different interpretation. The first case in which the point seems to have been directly considered, is that of Wright v. Howard, 1 Cond. Eng. Ch. Rep. 95, (1 Simmons & Stuart, 190,) and that case seems more expressly in point than the counsel for the plaintiff supposed. It applies not only to the right of diverting the water from the lands of proprietors below, but that of throwing it back on those of proprietors above. That was a bill for specific performance. The plaintiff was the owner of lands on the river Goit, on which were mills and machinery worked by water taken from the river by means of a weir or dam, and thence conveyed into the river Mersey, below its *638 junction with the Goit. The Duke of Norfolk was the proprietor above, on whose land the water was thrown back by the weir, and the Duke of Norfolk and two others were the proprietors of lands below, from which the water was diverted. The right to use the water, by means of the weir, was held under a lease from the Duke of Norfolk. The defendant objected to the performance of his purchase, on the ground that the plaintiff could not make a good title to the mills ; first, because, after the expiration of the lease, he could have no right to throw back the water on the land of the Duke of Norfolk above; and secondly, because he had no right to divert it from the proprietors below. The Vice Chancellor, Sir John Leach, considers both objections together, and decides them on the same reasoning. “The right to the use of water rests on clear and settled principles. Prima facie, the proprietor of each bank of a stream is the proprietor of half the land covered by the-stream, but there is no property in the water. Every proprietor has an equal right to use the water which flows in the stream ; and consequently no proprietor can have the right to use the water to the prejudice of any other proprietor. Without the consent of the other proprietors who may be affected by his operation, no proprietor can either diminish the quantity of Water which would otherwise descend to the proprietors below, nor throw the water back upon the proprietors above. Every proprietor who claims a right to throw the water back above, or to diminish the quantity of water which is to descend below, must, in order to maintain his claim, either prove an actual grant or license from the proprietors affected by his operations, or must prove an uninterrupted enjoyment for twenty years: which term of twenty years is now adopted on a principle of general convenience, as affording conclusive presumption of a grant.” He adds: “ It appears to me that no action will.lie for diverting or throwing back water, except by a person who sustains an actual injury; but the action must lie at any time within twenty years when the injury happens to arise, in consequence of a new purpose by the party to avail himself of his common right.” The subject is fully considered by Chief Justice Denman, in the case of Mason v. Hill, re-published in the Jurist, vol. I, part 3. That case respected the diverting of water from the proprietors of lands below. All the English authorities and dicta are reviewed and commented on, and it is unnecessary to repeat here that which is better said there. The position which is sustained by the Court is, “ that the possessor of lands through which a natural stream runs, has a right to the advantage of the stream flowing in its natural course, and to use it as he pleases, and for any purposes of his own *639 not inconsistent with a similar right of the proprietors of the land above and below; that neither can a proprietor above diminish the quantity or injure the quality of water which would otherwise descend, nor can any proprietor below throw back the water without his license or grant; and that whether loss by the diversion of the general benefit of such a stream, be or be not such an injury in point of law as to sustain an action without some special damage, yet as soon as the proprietor of the land has applied it to some purpose of utility, or is prevented from so doing by the diversion, he has a right of action against the person diverting.”
A distinction was attempted to be taken between the diverting and throwing back of water. But I cannot perceive the slightest ground for this distinction. In neither case can an action be sustained ; at all events, no damages can be recovered until the party has applied the water, or been prevented from applying it, to a useful purpose; where the injury is sustained, however, on what principle can we make a distinction between the proprietor above and him below? It may be observed that 'water cannot be thrown back on the land of the proprietor above without overflowing his soil. And though the water still remain within its natural channel, being only raised to a greater height upon the banks, yet still it is, in strictness, an invasion of the proprietor’s soil, over which, on general principles of law, he has the exclusive right of dominion. And in reference to this principle I think the right of occupancy must be explained. A man may do what he will upon his own land, provided he does not injure his neighbor. But he has no right to make any alterations in the condition of his neighbor’s property without his consent. The other instances of the right of occupancy mentioned by Blackstone, may help to illustrate this. If I build a house near my neighbor’s wall, by which my windows are darkened, I can sustain no action for it, because he was the first occupant; so if I erect a tan-yard, which is noisome, and another comes and builds his house near it, I was the first occupant, and he must submit to the inconvenience. So if I raise a mill pond on my own land, which renders the air unwholesome, and another person comes and lives near it, he has no right of action for this injury. But in neither of these cases is there any interference with the soil of another.
There seems to be a great apparent hardship on the part of the defendant, if he should lose the expense which he has incurred in building his mill. Yet 1 can conceive that there may be as great hardship on the part of the plaintiffs. They purchased their lands about the same time. The plaintiffs purchased with a view to this mill seat, and paid their money for it. *640 Then who ought to be the sufferer? He who claims to use his own land as he will, or he who claims to alter the condition of his neighbor’s property, without his consent, for his own benefit ? The -result will be that a person who is about to obstruct a running stream, for any purpose, must obtain the license of the other proprietors with whom his operations are likely to interfere, and it does not appear to me that this can be regarded as a matter of hardship.
There is an American case (Hatch v. Dwight, 17 Mass. Rep. 289,) in which it is said that the first occupant of a mill seat has a right to sufficient water to work his wheels, even if it should render useless the privilege of one above or below. But we think this opposed to the weight of reasoning and authority.^To this is opposed the case of Platt v. Root, 15 John. Rep. 213, in which it was held that the prior occupant of mills below had no right to prevent the erecting of mills above, and making a reasonable use of the water. The case of Palmer v. Mulligan, 3 Caine, 307, is referred to, and the opinion of Mr. Justice Livingston, who utterly rejected the doctrine that the person erecting the first mill - (¿hereby acquired any superior rights. To this conclusion Chancellor Kent arrives, upon a consideration of all the authorities. “ Every proprietor of lands on the banks of a river, has naturally an equal right to the use of the water which flows in the stream adjacent to his lands, as it was wont to flow, {currere solebat) without diminution or alteration. No proprietor has a right to use the water to the prejudice of other proprietors above or below him. unless he has a prior right to divert if, or a title to some exclusive enjoyment. He has no property in the water itself, but a simple use of it while it passes along. Aqua currit et debet currere, is the language of the law. Though he may use the water while it runs over his land, he cannot reasonably detain it or give it another direction, and he must returrPit to its ordinary channel when it leaves his estate. Without the consent of the adjoining proprietors, he cannot divert or diminish the quantity of water which would otherwise descend to the proprietors below, nor throw back the water upon the proprietors above,^without a grant, or an uninterrupted possession of twenty years, which is evidence of it.” 3 Kent’s Com. 353.
The motion to set aside the nonsuit is granted.
Johnson, J. concurred.
O’Neall, J.
I am not satisfied that the law is as ruled in the foregoing opinion.