Elizabeth G. Standen, Appellant, *v.* The New Rochelle Water Company, Respondent.

*Watercourses — a water company must compensate a riparian owner for water taken by it — can use no more water than any other proprietor — the court cannot fix the amount needed by a lower proprietor — customary use by the latter is immaterial — damages for prospective use — a recovery must carry costs.*

The general rule of the law is that the owner of lands through which a stream of water runs has a legal right to the usual and natural flow of water across his premises of which he cannot be deprived without his consent or just compensation; subject to the right of the upper riparian owner to use the water for his own domestic purposes. The water is a part of the freehold of which no man can be deprived except by the lawful judgment of his peers or by due process of law.

A water works company, organized under the laws of this State for the purpose of supplying water to a village, has power to take water from a non-navigable stream for the purposes of its organization, but is bound to provide a fair compensation to the individual whose property is thus taken; and, until such indemnity is afforded to the party, that power cannot be legally exercised.

It is not competent for such a corporation, nor for the court, to determine what amount of water is needed by a lower riparian proprietor upon the same stream; such proprietor is entitled to all the water except that which is used by the corporation for ordinary purposes, separate and apart from its needs arising from its business of furnishing water to a village.

A lower riparian proprietor upon the same stream is not limited to his customary use of the water, but may bring an action for the impairment of any prospective use which he might reasonably make of the stream, and in such an action is entitled to a recovery of nominal damages large enough at least to carry costs.

Where an action is brought by a lower riparian proprietor against an upper riparian proprietor upon the same stream, alleging that he has been deprived by the latter of the use and enjoyment of the natural flow of the water, and it

appears from the evidence in the case that 212,000,000 gallons of water were annually diverted and sold by the defendant, and that this was a large proportion of all the water that ran in the stream, it is not material that at some seasons of the year the water flowed over the dams, which had been constructed by the defendant, in a sufficient quantity to supply the plaintiff with all the water that was needful, when it appears that at other seasons of the year the stream was nearly or quite dry upon the plaintiff's premises.

APPEAL by the plaintiff, Elizabeth G. Standen, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Westchester on the 5th day of March, 1895, upon the decision of the court rendered after a trial at the Westchester Special Term dismissing the plaintiff's complaint upon the merits.

*Grove M. Harwood,* for the appellant.

*Martin J. Keogh,* for the respondent.

PRATT, J.:

This is an appeal from a judgment entered in the office of the clerk of Westchester county on March 5, 1895, upon a decision rendered at a Special Term of this court. The action was commenced on August 22, 1894, and was brought for the purpose of enjoining and restraining the defendant from obstructing the natural flow of a non-navigable stream of fresh water known as Hutchinson river, which runs in a southerly direction through portions of the towns of New Rochelle, Pelham and Eastchester, and from diverting the water from the channel of the stream, except for such uses on defendant's premises as are usual and proper for upper riparian owners. The plaintiff also asks judgment for such damages as she can prove were sustained by reason of such alleged obstruction and diversion.

The plaintiff and defendant are riparian owners on said river, the defendant being the upper riparian owner. The defendant owns over 14,000 feet on both sides of the stream, while the plaintiff owns 1,000 feet. The defendant has constructed entirely upon its own land, at different points on said stream, two dams, by means of which it has provided two reservoirs, for the storage of a part of the waters of said stream, upon its premises. The plaintiff claims that, in con-

sequence of the erection of these dams, she has been deprived of the use and enjoyment of the natural flow of water in the stream, and she seeks by this action to enjoin the defendant from further interfering with such use and enjoyment, and to recover damages for the loss occasioned thereby. Judgment was rendered for the defendant, dismissing the complaint upon the merits, with costs.

It seems to me plain from the evidence in this action that the judgment should have been the other way. The defendant is a water works company, organized under the laws of this State for the formation of water works companies, for the purpose of supplying water to the village of New Rochelle, and the purpose of these dams was to make two reservoirs to hold water for sale to the customers of the defendant. The general rule of law is that the owner of land, through which a stream of water runs, has a legal right to the usual and natural flow of the water across his premises, of which he cannot be deprived without his consent or just compensation, subject, of course, to the right of the upper riparian owner to use water for his own domestic purposes. The right to a stream of water is as sacred as the right to the soil over which it flows. It is a part of the freehold, of which no man can be disseized but by the lawful judgment of his peers or by due process of law. (*Gardner* v. *Trustees of the Village of Newburgh*, 2 Johns. Ch. 162; *Scriver* v. *Smith*, 100 N. Y. 471–480; *City of Syracuse* v. *Stacey*, 86 Hun, 441; Washb. on Easem. 276; Angell on Watercourses, § 596.)

"Though the Legislature has power to take private property for useful and necessary public purposes, it is bound to provide a fair compensation to the individual whose property is taken; and, until a just indemnity is afforded to the party, the power cannot be legally exercised." (*Gardner* v. *Trustees, supra.*)

It was not competent for the defendant or the court to determine what amount of water was needed by the plaintiff, for she was entitled to the whole of it, except what was used by the defendant for ordinary purposes. Undoubtedly the defendant had the right to build dams upon its own lands and to store water; but that does not carry the right to divert the water from its natural course. It appears from the evidence that 212,000,000 gallons were annually diverted and sold by the defendant. This evidence in the case is not disputed. That was quite a large proportion of all the water that

ran in said stream. It is true that, at some seasons of the year, the water flowed over the dams so as to supply all that was needful to the plaintiff below ; but the storage of the water and its sale at other seasons of the year made the stream nearly or quite dry on the plaintiff's land. The case of *The New York Rubber Company* v. *Rothery* (132 N. Y. 293–296) it seems to me is decisive of this case. In that case the court went so far as to hold that the title of the riparian proprietor to his water rights in a stream, and his right to redress for their invasion, are not conditional upon the beneficial user of them. "Where there is a diversion of the waters of the stream, which materially diminishes its natural flow over the lands of a proprietor below, he may maintain an action, and is entitled to recover nominal damages, although he has as yet made no use of the waters, or water enough is left in the stream for the purposes of his business as then conducted." It was not competent for the court to determine what quantity of water was necessary for the plaintiff for the purposes of her business as it had been conducted. "But the plaintiff's title to his water rights, and his right to redress for their invasion, were not conditional upon the beneficial user of them." (*Corning* v. *The Troy Iron & Nail Factory*, 40 N. Y. 191.)

We also think that the extent of watershed of the two parties to this suit was not material evidence upon the issues in this case, and that its admission was error. The plaintiff was not limited in her use of the water by the fact that the defendant owned a larger watershed than she did. She was entitled to the beneficial use of all the water that flowed in the stream, except such as was reasonably used by the defendant. The rights of the parties did not at all depend upon the extent of watershed owned by them. The lower riparian owner had a right to all the water that ran in the stream, except such as the defendant had a right to reasonably use for its own purposes.

There are numerous exceptions in this case, but the law seems to be well settled. The plaintiff is not limited in her use of the water as she has been accustomed to use it, but she has a right to bring an action for the impairment of such prospective use as she might reasonably make of the water. It is perfectly plain that here was a material diversion of a stream of water which would naturally run through the plaintiff's premises. The plaintiff having established

the right and shown that it was invaded, was at least entitled to nominal damages, which would have carried costs.

The judgment must be reversed and new trial ordered, costs to abide the event.

·Brown, P. J., concurred; Dykman, J., not sitting.

Judgment reversed and new trial ordered, costs to abide the event.