(47 App. Div. 405.)

ROBINSON et al. v. DAVIS.

(Supreme Court, Appellate Division, Second Department. January 30, 1900.)

WATERS AND WATER COURSES—RIPARIAN OWNERS—RIGHT TO USE WATER FOR IRRIGATION.

Where plaintiff and defendant owned all the land surrounding a pond, defendant was entitled to cut a ditch connecting one of the natural outlets of the pond, so as to irrigate his cranberry bog, and allow a reasonable amount of the overflow of the pond to flow thereon.

Appeal from special term, Suffolk county.

Action by John W. Robinson and another against George W. Davis. From a judgment for defendant, plaintiffs appeal. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, WOODWARD, and HIRSCHBERG, JJ.

Joseph M. Belford (Thomas Young, on the brief), for appellants.
Timothy M. Griffing, for respondent.

GOODRICH, P. J. A conflict has arisen between the plaintiffs and the defendant over the use of the water of Swan pond, on Long Island. The parties severally are the owners of all the upland adjoining the pond, which covers about 56 acres, and has an average depth of about 3 feet. The plaintiffs' land margins the pond at

its northeasterly portion for about 25 rods,—less than one-sixth of the outline of the pond,—while the defendant owns all the rest of the lands surrounding the pond. Projecting the lines of the plaintiffs' property, under the rule laid down in Gouverneur v. Ice Co., 134 N. Y. 355, 31 N. E. 865, 18 L. R. A. 695,—that is to say, from their points of meeting with the edge of the pond to the center of the latter,—the parties to this action would own the bed of the pond in the proportion above given. The southern boundary of the plaintiffs' lands also runs from the pond, along a natural creek or outlet of the pond, known as the "East Drain," to a point where the drain intersects the Calverton and Riverhead highway. The defendant's northern boundary is this drain or stream. Below the highway the defendant owns the land on both sides of the stream, to a point where the latter enters the Peconic river. Adjacent to the southwesterly part of the pond, and on a part of the defendant's lands, there is a marsh of about 25 acres, which is used as a cranberry bog. Some of the water from the pond for many years has flowed into and over the marsh, and in the "early seventies" the defendant, with the assistance and approval of the plaintiffs' father, from whom the sons derive title, enlarged the capacity of this marsh, and cut a flume or ditch from the pond, 4 feet wide and 2 deep, and, in order to control the flow of water, built a dam at the edge of the pond, where the flume was located, and other dams at various points along the ditch. The plaintiffs contended that there never was any natural drain from the pond, except the East drain; that there was no natural drain at the southwest corner, where the defendant dug his flume; that the flume has lowered the pond to such a degree as to prevent the outflow of the water through the East drain; that the result of the defendant's operation of his dam has been to keep the pond unduly full, or to lower it, to the injury of the plaintiffs; and that thereby several other ponds on this land, the waters of which flow into the East drain, are emptied by the lowering of the water in such drain. The court found, as matters of fact:

"(1) That while the main outlet of Swan pond is by Swan Pond drain, at its northeast corner, there is another natural outlet at the southwest corner. (2) That the defendant used no more water to flood his marsh than the natural overflow of the pond by the southwest drain. (3) That, if the defendant does use more water for that purpose than is furnished by that overflow, he does not use enough to appreciably lower the pond, or more than he is entitled to as the proprietor of the largest portion of the pond. (4) That the plaintiff John W. Robinson, or some one by his authority, dug out and deepened Swan Pond drain, and thereby lowered the pond below its normal level. (5) That, if the ponds lying wholly upon the plaintiff's land were lowered, it was the result of his own acts. (6) That the result of the filling in Swan Pond drain by the defendant was the restoration of the water in the pond to its normal level, and that the defendant was entitled to such result."

The court ordered judgment for the defendant, from which the plaintiffs appeal.

The object of the defendant's flume is to improve his marsh, and to flow his cranberry bog, so as to protect the vines and berries from vermin in the summer, and prevent them from freezing in the early winter. The latter object would seem to fall within the rea-

son of the rules of law relating to irrigation. The usual object of irrigation is to assist the growth of crops. We can see no difference, as to the principles of law applicable, between the care of growing crops, and the protection of a grown crop ungathered. The right of a riparian proprietor to divert the water of a stream for the purpose of irrigation is recognized both in England and this country. This is not a natural want authorizing an exclusive or undue appropriation by one proprietor. Such use of the stream must be reasonable, and not materially affect the appropriation of water by other proprietors, and the extent of the rights of each proprietor depends upon the circumstances. Gould, Waters, § 213. It is elementary that each riparian proprietor has the right to the ordinary use of water flowing past his land, for the purpose of supplying his natural and domestic wants; and it has even been held that for such purpose he may, if necessary, consume all the water of a stream, but that irrigation, being an extraordinary use, is an inferior right, and that, if the water be barely sufficient to answer the natural wants of all the proprietors, none of them may use it for irrigation. Gould, Waters, § 205. In the Gouverneur Case, above cited, the court (Judge Bradley writing about Croton lake, a little less in area than Swan pond) said:

"Natural ponds and small lakes are private property. They pass by grant of land in which they are included. They are also presumed, if nothing appears to the contrary, to belong to the riparian owners. And there would seem to be no substantial reason for the application of a different rule in the legal construction of grants of land bounded on them than is applied to conveyances bounding premises on fresh-water streams."

In Embrey v. Owen, 6 Exch. 353, it was held that flowing water is publici juris, to the extent that all reasonably may use it who have a right of access to it; that none can have any property in the water itself, except in the particular portion which he may choose to abstract from the stream and take into his own possession, and that the right to have a stream of water flow in its natural state, without diminution or alteration, is incident to the property in the land through which it passes; that this is not an absolute and exclusive right to the flow of all the water, but only subject to the rights of other riparian proprietors to the reasonable enjoyment of it, and consequently it is only for an unreasonable and unauthorized use of this common benefit that an action will lie. In Smith v. City of Rochester, 92 N. Y. 463, it was held (Judge Ruger writing) that riparian owners of land adjoining nonnavigable fresh-water streams take title out to the thread of the stream, and, as incident to the title, acquire the right to the usufructuary enjoyment of the undiminished and undisturbed flow of the stream, and that this is true, also, as to small lakes within the state.

Mr. Pomeroy, in his treatise on Riparian Rights (section 125), says:

"The rule that every riparian proprietor has an equal right to the use of the water as it is accustomed to flow, without diminution or alteration, is subject to a well-recognized limitation, viz. that each owner may make a reasonable use of the water for domestic, agricultural, and manufacturing purposes. But here it is necessary to note an important distinction between primary and secondary, or natural and artificial, wants; for, to supply his natural wants, as

for household purposes, for quenching thirst, and for his cattle, a riparian proprietor may consume the entire stream, if necessary, but for artificial wants, as for irrigating his land or propelling his machinery, he is only entitled to a reasonable use,"—citing Timm v. Bear, 29 Wis. 254.

Let us now apply the principles of these authorities to the facts found on conflicting evidence by the learned judge at special term. On those findings, it is difficult to predicate any infringement of the plaintiffs' rights by the defendant. He had the right to improve his lands by a ditch, in order to confine within its limits the overflow from the pond, even though he had no other purpose than to redeem a part of the marsh and fit it for cultivation; and he had an equal right to convey through such ditch a reasonable amount of water,—certainly as much as the natural overflow before the ditch was dug. The court has found that the defendant has used no more than the natural overflow, and not enough to lower appreciably the water in the pond, and that the defendant was using only what was and had been a natural outlet at the southwest corner of the pond. No unusual or unreasonable use of the water by the defendant appears on the evidence. There is evidence tending to show that the flow of the water from the plaintiffs' private pond was occasioned by their own act in digging out the East drain, the result of which was not only the lowering of the water in Swan pond, but the reduction of the level of the water in the East drain, and the consequent emptying of the plaintiffs' pond. This the defendant remedied by again filling up the drain in places, and throwing up a sand bar or obstruction at the eastern outlet of the pond, so as to keep up the level of the waters in the pond. The court, on sufficient evidence, has found that the water in the pond was lowered beyond its normal level by the plaintiffs' act in deepening the East drain, and that by the same act the injuries to their private ponds were occasioned. Under these circumstances, we are of opinion that the findings of fact and conclusions of law were justified by the evidence, and that the judgment should be affirmed.

Judgment affirmed, with costs. All concur, except HIRSCHBERG, J., who took no part.