PAUL M. PIERSON and FRANK R. PIERSON, Respondents, *v.* JAMES SPEYER, Appellant.

*Uses which a riparian owner may make of the water of a stream — it presents a question of fact — injunction to restrain the damming of the waters of a stream for ornamental purposes.*

An owner of land upon a natural stream may divert its waters for domestic purposes and for the gathering of ice; may arrest the flow temporarily by refilling a pond after repairs to the dam or after cleaning the reservoir; may irrigate, water cattle and use the water to sustain life, and may employ it for propelling machinery, even if the use renders the flow less or more irregular.

He may not, however, dam up the stream for the sole purpose of making a pond for ornamental purposes, where it appears that such action on his part operates, in times of drought, by presenting a large surface of the water to the evaporating action of the sun and air, to prevent any of the waters of the stream from reaching the land of a lower riparian owner.

In such a case the lower riparian owner is entitled to an injunction restraining the upper riparian owner from so intercepting the stream, except for domestic purposes, as to diminish the natural flow of water therein, and from continuing the maintenance of the dam.

The question whether the use of the waters of a stream by a riparian owner is reasonable is ordinarily one of fact.

APPEAL by the defendant, James Speyer, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Westchester on the 21st day of July, 1902, upon the decision of the court, rendered after a trial at the Kings County Special Term, restraining the defendant from so intercepting the flow of water in a certain stream as to diminish the flow thereof prior to the construction of a certain dam, and from continuing the dam so erected by said defendant.

*Charles J. Fay*, for the appellant.

*Smith Lent*, for the respondents.

HOOKER, J. :

The plaintiffs had for many years prior to the commencement of this action owned a piece of land in Westchester county, through which flowed a small natural stream. They were in the business of growing roses under glass, and the plants required to be supplied with water daily ; a lack of it for more than a few days would have proved fatal. A reservoir had been built by the plaintiffs on their land for the purpose of impounding the waters of the stream for this use, which required between 5,000 and 6,000 gallons per day. In the summer of 1899 the defendant built a dam across one of the branches of the stream, above plaintiffs' reservoir, and used the waters of that branch of the stream for ornamental purposes, intending later to apply them to domestic uses. A drought occurred in August and September, 1900, and no water flowed down the stream from defendant's dam. Plaintiffs thereupon commenced this action, asking that defendant be enjoined from interfering unlawfully with the natural flow of the waters of the brook and from maintaining his dam. They were successful, and from a judgment perpetually enjoining and restraining the defendant from so intercepting the flow of the water in the stream or from so interfering with the stream, except for domestic purposes, as to diminish the natural flow of water therein, prior to the construction of the dam, and from continuing the maintenance of the dam the latter appeals.

Upon what we consider sufficient evidence the learned trial court found these facts : That when not interfered with the stream supplies plaintiffs with the water necessary for their business of the culture of roses ; that the defendant has built upon his land across the stream a dam which intercepts it and causes its water to back up and overflow a large area of ground, and that thereby a much larger surface of water is exposed to sun and air than otherwise would be exposed, and the increased evaporation and absorption caused the water in August and September, 1900, to cease flowing to and over the plaintiffs' land and deprived them of the use of water which they otherwise would have received ; that the pond constructed by defendant was for supplying waters for ornamental and domestic

use. The evidence showed that during practically the whole of the drought considerable water flowed into defendant's pond, which is estimated by the experts at from 5,500 gallons per day upwards, but that during a period of about six weeks no water passed down below defendant's dam, except as he released it on two or three occasions. It was shown that defendant did not take from the pond any of the water he had impounded during the six weeks of drought; that the pond was 300 feet long by 200 feet wide; that the loss by absorption and evaporation during hot dry weather was about 12,000 gallons per day, and that there would have been some evaporation also in the stream itself between defendant's dam and plaintiffs' reservoir. On the whole evidence, however, the finding that plaintiffs were deprived of all water from the branch of the stream across which defendant's dam had been built, by reason of evaporation and absorption from the pond created by that dam, was justified.

The plaintiffs admit that an upstream owner may divert its waters for domestic purposes and for the gathering of ice; may arrest the flow temporarily by refilling a pond after repairs to the dam or after cleaning the reservoir; may irrigate, water cattle and use the water to sustain life, and may employ it for propelling machinery, even if the use renders the flow less or more irregular; such is the rule. (*Platt* v. *Johnson*, 15 Johns. 213; *Palmer* v. *Mulligan*, 3 Caines, 307; *Bullard* v. *Saratoga Victory Mfg. Co.*, 77 N. Y. 525; *De Baun* v. *Bean*, 29 Hun, 236; affd., 101 N. Y. 620; *Strobel* v. *Kerr Salt Co.*, 164 id. 303; *Robinson* v. *Davis*, 47 App. Div. 405; *Standen* v. *New Rochelle Water Co.*, 91 Hun, 272.) But the plaintiffs contend that defendant's use of the waters during the months of August and September, 1900, was not lawful and that he had no legal right to expose so large an area of water to the sun and air that the inflow to the defendant's pond was completely evaporated and absorbed away, there being at the time no use by the defendant, either domestic, agricultural or manufacturing. They are right in their contention, and the injunctive relief contained in the judgment appealed from appears to be the only remedy open to the plaintiffs by which they may be secured in their beneficial use of the brook's waters during any future season which may happen to be drier than is usual.

None of the authorities to which our attention has been called has gone so far as to hold that the whole flow of a stream may be consumed by a riparian owner to the detriment of others below him for any other than natural wants.    Presiding Justice GOODRICH, speaking for this court in *Robinson* v. *Davis* (*supra*), quotes with approval the language of Mr. Pomeroy on the subject (Riparian Rights, § 125) : " The rule that every riparian proprietor has an equal right to the use of the water as it is accustomed to flow, without diminution or alteration, is subject to a well-recognized limitation, viz., that each owner may make a reasonable use of the water for domestic, agricultural and manufacturing purposes.    But here it is necessary to note an important distinction between primary and secondary, or natural and artificial wants ; for, to supply his *natural* wants, as for household purposes, for quenching thirst and for his cattle, a riparian proprietor may consume the entire stream if necessary ; but for *artificial* wants, as for irrigating his land or propelling his machinery, he is only entitled to a reasonable use."

The Court of Appeals has recently made an exhaustive review of the subject of the rights of riparian owners in the waters of natural streams.    (*Strobel* v. *Kerr Salt Co., supra.*)    This language of Judge VANN is applicable to the facts in this case : " A riparian owner is entitled to a reasonable use of the water flowing by his premises in a natural stream, as an incident to his ownership of the soil, and to have it transmitted to him without sensible alteration in quality or unreasonable diminution in quantity.    While he does not own the running water, he has the right to a reasonable use of it as it passes by his land.    As all other owners upon the same stream have the same right, the right of no one is absolute, but is qualified by the right of the others to have the stream substantially preserved in its natural size, flow and purity, and to protection against material diversion or pollution.    This is the common right of all, which must not be interfered with by any.    The use by each must, therefore, be consistent with the rights of the others, and the maxim of *sic utere tuo* observed by all.    The rule of the ancient common law is still in force ; *aqua currit et debet currere, ut currere solebat.* Consumption by watering cattle, temporary detention by dams in order to run machinery, irrigation when not out of proportion to the size of the stream, and some other familiar uses, although in

fact a diversion of the water involving some loss, are not regarded as an unlawful diversion, but are allowed as a necessary incident to the use in order to effect the highest average benefit to all the riparian owners. As the enjoyment of each must be according to his opportunity and the upper owner has the first chance, the lower owners must submit to such loss as is caused by reasonable use. Surrounding circumstances, such as the size and velocity of the stream, the usage of the country, the extent of the injury, convenience in doing business and the indispensable public necessity of cities and villages for drainage, are also taken into consideration, so that a use which, under certain circumstances, is held reasonable, under different circumstances would be held unreasonable. It is also material, sometimes, to ascertain which party first erected his works and began to appropriate the water." (Citing cases.)

It has also been held that the question of reasonable use is ordinarily one of fact. (*Bullard* v. *Saratoga Victory Mfg. Co., supra; Colrick* v. *Swinburne*, 105 N. Y. 503.) The learned court below has found the fact to be that the defendant's use was unreasonable, and with this finding we are not disposed to interfere.

The judgment appealed from should be affirmed, with costs.

Goodrich, P. J., Bartlett, Woodward and Hirschberg, JJ., concurred.

Judgment affirmed, with costs.