WEST SHORE RAILROAD COMPANY, Owner and Lessor, THE NEW YORK CENTRAL RAILROAD COMPANY, Lessee, Appellants, *v.* THE STATE OF NEW YORK, Respondent.   (Claim No. 15,635.)

Fourth Department, May 5, 1926.

Canals — Barge canal — action against State to recover damage caused to defendant's bridge by diversion of water from Seneca river to Barge canal — lowering river exposed wooden grillage causing it to decay — settlement for land appropriated did not include present damage — appropriation of right to lower river was actual when water was diverted and not by filing maps — State did not have right without compensation to divert water of river for benefit of canal navigation — claimants as riparian owners had right to undisturbed flow at natural level.

The act of the State of New York in lowering the Seneca river by the diversion of waters therefrom to the Barge canal, which caused the wooden grillage under claimant's railroad bridge to be exposed to the air and resulted in the decaying of the grillage to such an extent as to require a replacement, renders the State liable for the damage caused by said diversion.

A settlement entered into between the State and the claimants when it appropriated land nearby did not include the damage caused by the lowering of the level of the Seneca river.

The State actually appropriated the waters of the Seneca river at the time when it diverted the same into the Barge canal, and it was not necessary for an appropriation that the State should file maps or serve notice.

The claimants are riparian owners on the Seneca river and have a common-law right to have the river maintained at its natural level and the State cannot appropriate the waters thereof for the improvement of the navigation of the Barge canal without compensating the claimants for the damages which they have suffered.

APPEAL by the claimants, West Shore Railroad Company and another, from a judgment of the Court of Claims in favor of the defendant, entered in the office of the clerk of said court on the 23d day of May, 1925, pursuant to a decision of the court dismissing the claimants' claim on the merits.

*Alex. S. Lyman* [*Frederick L. Wheeler* and *Crosby J. Beakes* of counsel], for the appellants.

*Albert Ottinger*, Attorney-General [*John H. Clogston*, Deputy Attorney-General, of counsel], for the respondent.

CLARK, J.   Claimant, the West Shore Railroad Company, owns, and the New York Central Railroad Company, as lessee of the West Shore Railroad Company, is in possession of, a two-track steel girder bridge, which crosses Seneca river near Montezuma, practically at right angles.   Claimants own the fee of the entire river bed and the adjacent uplands at the site of said crossing.

This bridge is a long one resting on twenty piers about fifty-four feet apart. Some years after the bridge was constructed the westerly half was filled in and made into a solid embankment, leaving the rest of the bridge with fourteen girder spans each some thirty feet long resting on concrete piers being supported on piles without timber grillages.

Seneca river has no tide, is wholly within the State of New York, and formerly passed in a northerly direction in the vicinity of the location of claimants' bridge in three different channels, one of which was a dredged channel.

Prior to the passage of the Barge Canal Act in 1903 (Chap. 147), Seneca river was not a portion of the canal system of the State. When the State entered upon its Barge canal construction in the vicinity of claimants' said bridge, the canal at that point was located in a new channel, constructed by the State on higher ground some 400 feet east of the bridge and wholly outside any of the channels of Seneca river, the new channel extending from a point some 3,000 feet south of the bridge, and striking the river again two miles north of the bridge. This new channel was cut through lands of claimants appropriated by the State and has been paid for. Following the cutting of this new channel waters of the river were diverted through it with the result that the waters of the river as it passed under the bridge were permanently lowered from three to four feet, thus exposing the timber grillages and tops of piles to the air, and they decayed to such an extent that in 1920 claimants were obliged to replace them at an expense of $26,357.57.

Claimants demand compensation as for an appropriation for the permanent lowering and diverting the waters of Seneca river, the destruction of two of the piers of the bridge, and damages to the other piers and grillages, and for the estimated cost of relocating and reconstructing of the foundations, piers, etc.

The Court of Claims dismissed the claim, holding that the State did not divert the waters of the river, but merely lowered the level; that it had not appropriated said waters, and that whatever it did in the premises was necessary for the development of the canal enterprise and was done under legislative authority and without trespass or negligence, and that any damages not already paid for under their settlement agreement of August 11, 1911, were consequential damages for which the law can afford claimants no remedy.

The Court of Claims found that the waters of Seneca river at this location have been permanently lowered below their prior, natural and usual elevation by reason of the construction, maintenance and operation of the Barge canal, and that since the construction of said canal the elevation of the water in Seneca river

and the flow thereof in the vicinity of claimants' bridge has been and is controlled by the Barge canal. The court also found that since the construction of the canal the water table has been below the level of the tops of the grillages east of the dredged channel for a considerable time and has alternately risen above and fallen below the level of the tops of the piles west of the dredged channel. The court also found that so long as the river flowed in its natural condition without any changes arising from the acts of the State in connection with its Barge canal operations, the piles and timber grillages supporting the substructure of claimants' bridge remained as originally constructed, but that since the Barge canal construction the tops of the piles and the grillages supporting the piers and abutments of the bridge have been and are exposed to conditions alternately wet and dry and that the damage to the grillages at piers 17 and 18 of the bridge, which required their reconstruction in 1920, was caused by work in connection with the Barge canal construction, but such damage was consequential in its nature resulting from a public work in the public interests and in pursuance of legislative authority and without negligence or trespass on lands of claimants, and that there can be no recovery.

There is no dispute about the fact that the State appropriated a portion of claimants' right of way for the new Barge canal channel and that before the new channel was dug the West Shore railroad crossed these lands so appropriated on an earth embankment, and that it was necessary to construct a bridge in place thereof to carry the tracks over the newly-constructed channel. This bridge was constructed and the State paid for it, and now claims that it was a settlement of all damages resulting from the Barge canal construction at this point.

This is a fallacy, as will be shown by the maps filed showing what was appropriated for the new channel, and what the settlement agreement shows on its face was included therein.

The land appropriated according to the maps filed was 1.491 acres " upon which there is an earth embankment," and it says it covers merely *lands, buildings and other structures,* but there is no express appropriation of waters.. The river did not flow on this appropriated parcel of land, and there was high land between that parcel and the east end of the West Shore railroad bridge.

The settlement agreement provided, among other things, for a bridge " carrying said railroad tracks over said canal," and claimants undertook to erect and maintain such bridge. They also undertook to construct suitable false work for carrying the tracks over the canal with an opening forty-five feet wide for the passage of the contractor's dredge.

39

The amount of damages paid by the State under that agreement included items for building the bridge and approaches and false work, and for raising the bridge W. 467 (which is the bridge claimed to be damaged), engineering supervision, maintenance and renewals. These items as specified in the settlement clearly had reference to the new bridge which was to be constructed over the new canal channel on the appropriated land, and had no reference to the old bridge W. 467. This idea is strengthened by the fact that in the settlement agreement it was specified what was intended to be included in the settlement, and so far as the old bridge is concerned nothing was included and nothing was within the contemplation of the parties except the estimated cost of " raising bridge W. 467, $37,016.80." If it had been the intention of the parties to include in the settlement all damages that might be caused to the old bridge and all damages of every kind that might be due to the permanent lowering the waters of the river, it is reasonable to conclude that it would have been so specified in the agreement, as it was with reference to raising the old bridge.

The State when it appropriated the high land of claimants some distance east of the east end of the old bridge for the new canal channel, did not appropriate the right to lower the waters of the river or disturb them. The appropriation of the right to divert the waters of the river and to lower them took place, not under the maps which were filed by the State, but later and on September 29, 1916, and after the new channel had been dug, and when the State diverted the waters from the river proper into the new canal channel, some 3,000 feet south of the old West Shore railroad bridge.

The diverting the waters of the river at that point through the new channel, thus permanently lowering the flow of the waters through claimants' right of way, was an appropriation even though no maps were filed or served, providing for such diversion, for the filing of maps and serving of notice is not an exclusive way of appropriating property for the use of the improved canal. (*American Woolen Co.* v. *State of New York*, 195 App. Div. 698; *Fulton Light, Heat & Power Co.* v. *State of New York*, 200 N. Y. 400; *Weismantle* v. *State of New York*, 210 App. Div. 608.)

The Court of Claims, in its 114th finding of fact, found that " To the extent that the Barge canal was constructed in the bed and between the banks of the Seneca river, it constituted an improvement of the navigation of the river. The construction of the new Barge canal channel through uplands in part appropriated from claimants was not an improvement of the navigation of the river, but the construction of a new canal."

The last clause of the 114th finding of fact covers the situation here. The State appropriated the uplands east of claimants' bridge W. 467 when it filed its maps and took possession, and that was done so a new channel for the canal could be dug. This digging of the new channel did not lower the waters of the river, for the channel and river had not yet been connected. Later and on the 29th day of September, 1916, the State made such connection 3,000 feet south of claimants' bridge, and then and not till then were the waters of the river permanently lowered and appropriated. Any finding to the contrary would be against the weight of the evidence.

At that time by reason of the diverting and permanently lowering the waters of the river the foundation of claimants' bridge was exposed to the action of the elements and the destruction and claimed damage followed.

The diverting and lowering the waters and causing them to leave their natural course and flow through the new canal channel was not an improvement of the navigability of Seneca river, but was diverting the waters of the river into another and new channel to improve navigation there, but not in the river.

This may not be done. (*Commissioners of Canal Fund* v. *Kempshall,* 26 Wend. 404.) Claimants own lands constituting a railroad right of way on both sides of the river where their bridge is located, and as riparian owners had the right to the undisturbed flow of its waters in the usual way, but subject to the right of the State to use, regulate and control the waters of the river for purposes of navigation thereon.

If the State had lowered the channel of the river for the purpose of improving the navigation of that stream claimants would have no right to damages, for their rights would be merely those of riparian owners, they not having a grant from the State for any special privileges in the stream. (*Hinkley* v. *State of New York,* 202 App. Div. 570; affd., 234 N. Y. 309; *Smith* v. *City of Rochester,* 92 id. 463.)

Here the State did not undertake by its operations to improve the navigability of Seneca river, but it diverted the waters of the river to other purposes of artificial navigation, and in a channel wholly distinct and apart from the river itself, and to improve navigation in that channel and not in the river. Under the circumstances the State cannot claim immunity for any damages suffered by a riparian owner which resulted from these operations, and such damages are not consequential in their nature, and a claimant who has suffered such damages is entitled to compensation. (*Fulton Light, Heat & Power Co.* v. *State of New York,* 200 N. Y. 400; *Oswego & Syracuse R. R. Co.* v. *State of New York,* 226 id.

351; *American Woolen Co.* v. *State of New York,* 195 App. Div. 698; *Weismantle* v. *State of New York,* 210 id. 608; *Standen* v. *New Rochelle Water Co.,* 91 Hun, 272.)

The judgment should be reversed on the law and the facts, and a new trial granted, with costs to appellants to abide the event.

Findings of fact Nos. 68, 92, 93, 94, 109, 110, 116 and 117 are disapproved and reversed, and conclusions of law Nos. 9, 10, 11, 12, 13, 15, 16, 17 and 18 are disapproved.

HUBBS, P. J., DAVIS, SEARS and TAYLOR, JJ., concur.

Judgment reversed on the law and facts and a new trial granted, with costs to appellants to abide event. Certain findings of fact and conclusions of law disapproved and reversed.