Minnie GLASGOLD, Plaintiff,

v.

SECRETARY OF HEALTH AND HU-
MAN SERVICES et al., Defendants.

No. 77 C 1363.*

United States District Court,
E.D. New York.

Jan. 7, 1982.

* Consolidated with: Louis Greenbaum v. Secretary of Health and Human Services, 77 C 1441; Sylvia Kaufman v. Secretary of Health and Human Services, 77 C 2311; Annette Coombes v. Secretary of Health and Human Services, 77 C 2485; Esther Fleeter v. Secretary of Health and Human Services, 78 C 303; Anne Meyer v. Secretary of Health and Human Services, 78 C 487; Frances Hunt v. Secretary of Health and Human Services, 78 C 660; Minnie Israel v. Secretary of Health and Human Services, 78 C 1108; Ida Dorfman v. Secretary of Health and Human Services, 78 C 1109; Celia Rothman v. Secretary of Health and Human Services, 78 C 1457; Mae Thompson v. Secretary of Health and Human Services, 78 C 1584; Ann Leone v. Secretary of Health and Human Services, 78 C 1757; Anna Coppola v. Secretary of Health and Human Services, 78 C 1792; Venera Galluzzo v. Secretary of Health and Human Services, 78 C 1913; Catherine Tracey v. Secretary of Health and Human Services, 79 C 111; Lena Tumbarello v. Secretary of Health and Human Services, 79 C 688; Louis Lindstrom v. Secretary of Health and Human Services, 79 C 1628; Alma Warantz v. Secretary of Health and Human Services, 79 C 1719; Anna Riley v. Secretary of Health and Human Services, 79 C 2993; Minnie Guigno v. Secretary of Health and Human Services (Two Cases), 79 C 3060, CV 80–0475; Margaret Fetter v. Secretary of Health and Human Services, CV 81–0935.

Nassau County Law Services Committee, Inc., Robert & Schneider, Hempstead, N.Y., for plaintiffs.

Edward R. Korman, U.S. Atty., E.D.N.Y. by Jo Davis, Asst. U.S. Atty., Brooklyn, N.Y., for Federal defendants.

Robert Abrams, Atty. Gen., State of N.Y. by Stephen Jacoby, Asst. Atty. Gen., New York City, for New York State defendants.

Edward G. McCabe, County Atty. of Nassau County, Mineola, N.Y., for County defendants.

GEORGE C. PRATT, District Judge.

## I. INTRODUCTION

By commencing a series of individual actions over a period of several years, plaintiffs have launched a wholesale attack on the federal, state and county governments' calculation of benefits under the Supplemental Security Income Program. Plaintiffs advance federal and New York State constitutional and statutory challenges to the program, and further contend that the program is not administered in accordance with the statutory framework.

At the heart of plaintiffs' case is the effect of "in-kind" income on the amount of their benefits. Plaintiffs contend that the concept of "in-kind" income has no place in the calculation of Supplemental Security Income Program benefits; defendants respond that the controlling statutes warrant, and in fact compel, a reduction in benefits to take into account "in-kind" income. Each side contends that the controlling statutory criteria and the legislative history support its interpretation of the same subject matter.

In addition to their substantive contentions, plaintiffs move for varied procedural relief, with a resulting interaction among procedural and substantive issues. The fed-eral, state and county defendants and proposed defendants oppose plaintiffs' motions and cross-move to dismiss or for summary judgment.

After a preliminary discussion of the statutory framework attacked by plaintiffs, the court will address the particular motions now pending.

## II. SSI PROGRAM

### A. Federal Program

Plaintiffs are recipients under the Supplemental Security Income (SSI) program, a federal program designed to provide financial assistance to the aged, blind and disabled whose income and resources are below the statutory minimums. 42 U.S.C. § 1381 et seq. SSI went into effect on January 1, 1974 and replaced a myriad of partially funded federal programs previously administered by the participating states. See, e.g., former Title 6 of New York State Social Services Law, amended by 1974 N.Y. Laws ch. 1080 § 28 (amended effective January 1, 1974 to coincide with new federal program.)

Pursuant to Congress' objective of standardizing treatment of SSI recipients nationwide, H.R.Rep. No. 92–231, 92d Cong., 2d Sess. (1972), reprinted in [1972] U.S.Code Cong. & Ad.News 4989, federal criteria govern eligibility for the program. 42 U.S.C. § 1382–1382f. The SSI program does not consider individual circumstances or needs; rather, SSI is a "flat grant" program designed to provide for all eligible recipients a national level of minimum income.

Different categories for eligibility and grant level are established depending upon whether a recipient lives alone, lives with an eligible spouse, 42 U.S.C. § 1382, or lives in the household of another, § 1382a(a)(2).[1]

---

1. To be eligible for SSI as of 1974, an individual without an eligible spouse must have not more than $1,752 per year in non-excludable income, and not more than $1,500 in non-excludable resources ($2,250 if living with a spouse). 42 U.S.C. § 1382(a)(1). An eligible couple, i.e., one where each spouse is eligible for SSI, must have a combined income of less than $2,628 per year, and combined resources of less than $2,250. 42 U.S.C. § 1382(a)(2). All of the above figures have been increased periodically since January, 1974 under the cost of living adjustments provided for in 42 U.S.C. § 1382f, and calculated pursuant to 42 U.S.C. § 415.

Once an individual is found to be eligible for SSI, his or her flat grant maximum amount is subject to a reduction, in the amount of any available income not otherwise excludable under the SSI rules, § 1382(b). "Income" for SSI purposes (hereinafter, countable income) is defined expansively, as including both earned income, § 1382a(a)(1), and unearned income, § 1382a(a)(2). Unearned income is defined as including "support and maintenance furnished in cash or kind". § 1382a(a)(2)(A).

If a recipient is "living in another person's household and receiving support and maintenance in kind from such person", his or her grant is automatically reduced by one-third "in lieu of including such support and maintenance in the unearned income of such individual". § 1382a(a)(2)(A). This so-called automatic one-third reduction rule applies only if several factors are present;[2]

otherwise a "presumed value" rule applies. After the countable income is calculated, either actually or by the one-third reduction rule, the recipient's grant is reduced accordingly.

B. *State Programs*

In addition to the federal portion of the SSI payment, the statute allows the states to supplement the federal grant. In fact, the federal statute encourages state supplementation by providing that the Secretary of Health & Human Services will administer the state supplement in conjunction with the federal grant. § 1382e(b). The New York State legislature has authorized the state department of social services to contract with the federal secretary for administration of the New York supplementation programs. New York Social Services Law § 211 (McKinney Cum.Supp.1980–

---

In determining eligibility for SSI, 42 U.S.C. § 1382a(b) excludes specific items from a recipient's countable income, and § 1382b(a) excludes additional items from countable resources. For example, the first $240 per year of income received is excluded, § 1382a(b)(2)(A), as are certain state grants based on a recipient's need, § 1382a(b)(6), blindness, § 1382a(b)(4)(A), or disability, § 1382a(b)(4)(B). Also excluded are educational grants, § 1382a(b)(7), child support, § 1382a(b)(9), and other enumerated exceptions. Exclusions from countable resources include an individual's home, § 1382b(a)(1), household goods, personal effects and car, § 1382b(a)(2).

2. The secretary's implementing regulation provides that the automatic one-third reduction rule applies only to recipients who:
(1) Live in another person's household * * * for a full calendar month except for temporary absences * * *, and
(2) Receive both food and shelter from the person in whose household [the recipient is] living. 20 CFR § 416.1131(a) (1981) (formerly 20 CFR § 416.1125).
"Living in another person's household" is defined in 20 CFR § 416.1132, which provides as follows:
(a) *Household.* For purposes of this subpart, we consider a household to be a personal place of residence. A commercial establishment such as a hotel or boarding house is not a household but a household can exist within a commercial establishment. If you live in a commercial establishment, we do not automatically consider you to be a member of the household of the proprietor. You may, how-

ever, live in the household of a roomer or boarder within the hotel or boarding house. An institution is not a household and a household cannot exist within an institution.
&ast; &ast; &ast; &ast; &ast; &ast;
(b) *Another person's household.* You live in another person's household if paragraph (c) of this section does not apply and if the person who supplies the support and maintenance lives in the same household and is not—
(1) Your spouse * * *;
(2) A minor child; or
(3) An ineligible person (your spouse, parent, or essential person) whose income may be deemed to you as described in §§ 416.1160 through 416.1169.
(c) *Your own household—not another person's household.* You are not living in another person's household (you live in your own household) if—
(1) You (or your spouse who lives with you or any person whose income is deemed to you) have an ownership interest or a life estate interest in the home;
(2) You (or your spouse who lives with you or any person whose income is deemed to you) are liable to the landlord for payment of any part of the rental charges;
(3) You live in a noninstitutional care situation * * *;
(4) You pay at least a pro rata share of household and operating expenses * * *; or
(5) All members of the household receive public income—maintenance payments * *.

1981), and the federal and state authorities have entered into such an agreement. *See* agreement between secretary and state annexed to Bushart aff.

The federal statutory scheme contemplates two distinct state supplementation programs, optional and mandatory. The optional state supplementation (OSS), provided for in 42 U.S.C. § 1382e and enacted by New York in § 209 of the Social Services Law, increases a recipient's income level to the New York State minimum level, which is higher than the federal level. The federal and state defendants interpret the governing statutes to mean that the same eligibility and grant level criteria are used for OSS as apply to the federal SSI payment.[3] A recipient's federal countable income (FCI), including unearned in-kind income, is considered to be income available to the OSS recipient. New York Social Services Law § 208(6), (8); § 209(1)(a), (b). The result is a reduction in a New York recipient's total federal SSI/OSS grant in an amount equal to the FCI.

In addition to OSS, any "grandfathered" SSI recipient, *i.e.* one who formerly was a recipient under a pre-SSI state-run program, is entitled to a mandatory state supplement (MSS) so that the total grant a "grandfathered" recipient receives is at least equal to the amount to which the recipient would have been entitled under the state programs in effect prior to the effective date of SSI, January 1, 1974. Renegotiation Amendments of 1973, Pub.L. No. 93–66, § 212(a)(3)(A), 87 Stat. 152 (1973). Thus, a "grandfathered" recipient is entitled to the greater of MSS or OSS.

A significant difference between SSI and the former New York State public assistance programs is in their handling of the concept of countable income, which, as discussed above, reduces the SSI grant by the amount of any earned or unearned income. In-kind income, including food or shelter, that a recipient receives from non-SSI sources must be included in FCI, even though such income was not included as countable income under the rules governing the former state programs (state countable income, or SCI). Because New York's 1973 public assistance grants were not lowered to take into account in-kind income, New York must pay a "grandfathered" SSI recipient the amount attributable to any in-kind income that results in a lesser grant than the recipient received in 1973. New York's MSS provision so provides, § 210, as does the secretary's implementing regulation, 20 CFR § 416.2050 (1981).

In summary, the SSI program as it operates in New York provides for three types of grants:

1. The federal SSI payment, calculated by deducting a recipient's FCI (including federal in-kind income rules) from the federal minimum income level;

2. OSS, calculated by deducting a recipient's federal minimum income level from his or her New York State's minimum income level; and

3. MSS, applicable only to grandfathered SSI recipients, and calculated as the difference between a recipient's federal SSI payment (using FCI standards) and the amount to which the individual would have been entitled under the state program as of December, 1973 (using SCI standards).

## III. CONTENTIONS OF THE PARTIES

Plaintiffs attack numerous features of the SSI program. They contend that the federal statute is unconstitutional, either as written or as applied; that the regulations do not accurately implement the statute and thus produce unintended and unconstitutional results; that New York State's optional supplementation program violates the federal and state constitutions as written or as applied; and that plaintiffs' rights to privacy are violated by certain policies instituted by defendants in policing the SSI program.

Plaintiffs, in effect, ask the court to review the entire structure of the SSI pro-

---

**3.** The correctness of this interpretation of the controlling statutory criteria is hotly contested by plaintiffs. *See Statutory Challenges to OSS Calculation,* section IV, *infra.*

gram, at least as administered in New York, and to either invalidate or reinterpret numerous key components of the federal and state statutes and regulations.

Plaintiffs' advance substantive arguments in support of the procedural relief they are seeking. They move to consolidate all of the pending cases; to serve and file an amended consolidated complaint; to add additional federal, state, and county defendants; to allow additional individuals to intervene as party plaintiffs; and to certify a class composed of all aged, blind and disabled persons who have resided in New York at any time after January 1, 1974. The procedural relief is sought by plaintiffs to enable them to advance their common arguments in one lawsuit, thereby conserving the court's and the parties' resources and, in general, furthering policies of judicial economy.

The individual suits themselves present procedural problems, in that some plaintiffs have not exhausted their administrative remedies. Defendants have moved to remand some of the individual suits because of admitted errors in the calculations of benefits and to remand others based on the lack of exhaustion. Plaintiffs resist remand because each of the suits involves some statutory or constitutional challenge to the SSI program, which is arguably beyond the domain of the administrative process and is a proper subject for consideration by this court.

Before proceeding to the merits of these actions, the court has satisfied itself that jurisdiction properly lies over all of the defendants in at least those actions where plaintiffs have exhausted their administrative remedies. 42 U.S.C. § 405(g); *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *Ellis v. Blum,* 643

F.2d 68 (CA2 1981). Whether other statutes confer jurisdiction in those cases where not all rungs in the administrative process have been climbed is a question that need not be answered at present, since the identical arguments are made by all plaintiffs in all cases and are thus before the court in any event.[4]

Although plaintiffs are thus far seeking only procedural relief, the basic facts are not in dispute, and much of plaintiffs' argument boils down to a contention that the undisputed facts entitle them to judgment in their favor. All defendants and proposed defendants oppose the procedural relief sought by plaintiffs, mainly because defendants oppose the substantive arguments advanced. In addition, defendants have moved to dismiss or for summary judgment. Because the parties support their motions with affidavits, they will be treated as motions for summary judgment. FRCP 12(b).

The procedural motions become relevant only if plaintiffs survive the motions for summary judgment; accordingly, the court will first consider the substantive issues raised by defendants' motions.

## IV. STATUTORY CHALLENGES TO OSS CALCULATION

Plaintiffs contend that the current method of computing the New York State supplements to the federal SSI payment does not comport with the federal and state statutes and regulations. As discussed earlier, SSI Program, section II, *supra,* there are two methods used to compute the two types of state supplements, OSS and MSS. Plaintiffs' diverse arguments all have a common goal: to convince the court that the countable income rules in effect under New York's pre-SSI programs (SCI) should govern calculation of OSS as well as MSS.

---

4. Plaintiffs urge that jurisdiction lies under 28 U.S.C. § 1343 and 42 U.S.C. § 1983 on the theory that the federal and state officials are acting under color of state law when they are administering OSS. It is also urged that all claims under the Privacy Act, 5 U.S.C. § 552a(g)(1), are properly before the court without regard to any exhaustion requirement. Relying on the Second Circuit's recent decision in *Ellis v. Blum,* 643 F.2d 68 (CA2 1981), plaintiffs also claim jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) or § 1361 (mandamus). Finally, all of the plaintiffs and proposed plaintiffs assert that they have taken sufficient administrative action so as to enable them to bring their claims before this court under 42 U.S.C. 405(g).

## A. *Definition of Unearned Income*

█ Plaintiffs first argue that the federal definition of unearned income, incorporated by New York State in the federal/state agreement and in § 208 of New York's Social Services Law, does not include all items of in-kind income. However, plaintiffs are faced with an apparently insurmountable obstacle: the apparently clear federal statutory provisions requiring that a recipient's grant be reduced by the amount of any in-kind income. The relevant provisions require that a recipient's benefits be decreased by the amount of the recipient's "income", which is defined as including both "earned" and "unearned" income, § 1382a. Unearned income is thereafter defined as encompassing "support and maintenance furnished in cash or kind", § 1382a(a)(2)(A).

Plaintiffs' assertion that unearned income does not include all support and maintenance is based on the language of the entire statutory provision:

> (2) unearned income means all other income, including—(A) *support and maintenance furnished in cash or kind;* except that in the case of any individual (and his eligible spouse, if any) living in another person's household and receiving *support and maintenance* in kind from such person, the dollar amounts otherwise applicable to such individual (and spouse) as specified in subsections (a) and (b) of section 1382 of this title shall be reduced by 33⅓ percent in lieu of including such *support and maintenance* in the unearned income of such individual (and spouse) as otherwise required by this subparagraph.
> 42 U.S.C. § 1382a(a)(2)(A) (emphasis added).

As provided in the statute, for an "individual living in the household of another", a reduction of one-third applies regardless of the actual value of the support and maintenance. However, the implementing regulation specifically provides that the one-third rule applies only when the recipient "lives in another person's household", 20 CFR § 416.1131(a)(1) (1981), and receives *both food and shelter* from the person in whose household the recipient is living. § 416.-1131(a)(2). An individual is *not* considered to be living in "another person's household" if the individual is paying at least a "pro rata share toward monthly household operating expenses." § 416.1132(a). Thus, under the regulation for the automatic one-third rule to apply, an individual must (1) live in the household of another; (2) receive both food and shelter from that person; and (3) pay less than a pro rata share of the household expenses. The parties agree that the criteria set forth in 20 CFR §§ 416.1131 & 416.1132, in relation to the automatic one-third reduction rule accurately implement Congress' intention in enacting § 1382a(a)(2).

Plaintiffs point out that § 1382a(a)(2)(A) uses the phrase "support and maintenance" three times. They argue that because the second and third times the phrase appears, it is interpreted by the regulations to mean that a recipient must receive *both* food *and* shelter for the one-third rule to apply, it follows that the first time the phrase "support and maintenance" appears it should also be interpreted to define "unearned income" as including only the situation where an individual receives *both* support *and* maintenance in cash or kind. However, the secretary's regulations define unearned income expansively, and take into account any food, clothing *or* shelter received from any source.

In the situation described above (household of another), the automatic one-third reduction rule applies, § 416.1131–.1133; in all other in-kind income situations, a "presumed value" of one-third applies, but it may be rebutted by showing a lesser actual value of the in-kind income received, § 416.1140–.1141. Combined the regulations mean that receipt of in-kind income of any type, in any amount, from any source, should result in a reduced SSI grant.[5]

---

**5.** Of course, the mere existence of these regulations does not ensure that the grant of every recipient receiving in-kind income is in fact reduced, but the court will focus on the regulations as they are intended to be applied.

Plaintiffs' interpretation of § 1382a(a)(2)(A) warps its relatively clear language. On its face the statute defines unearned income as "including support and maintenance"; if Congress meant to limit the scope of the statutory term unearned income to include only those situations where both food and shelter were furnished to a recipient, surely more precise language would have been chosen. Moreover, if the statute were read as plaintiffs suggest, the other subsections of § 1382a(a)(2) defining items included in unearned income would have to be construed similarly. For example, subsection (c), defining unearned income as including "prizes *and* awards", would mean only a recipient receiving *both* prizes *and* awards would have either of those items included in the individual's unearned income. Such an interpretation would be ludicrous.

The legislative history of SSI also militates in favor of a broad definition of income. One of the congressional committees indicated:

> Your committee believes that *the new program,* financed as it would be from general revenues and with the benefits based on need, *should pay people only to the extent that their needs are not met from other sources * * *.* (emphasis supplied). HR Rep. No. 92–231, *supra,* [1972] U.S.Code Cong. & Ad.News at 5135–36.

To fulfill this goal, the statute sets forth a broad list of items which will result in a recipient's grant being lowered to the extent these outside sources are actually available to the recipient. Thus, "income" is defined expansively, to include "all" earned and unearned income, whether furnished "in cash or in kind".

The court concludes that the secretary's regulation defining unearned income as including food, clothing or shelter from any source, 20 CFR § 416.1130(b), accurately implements the definition of unearned income set forth in 42 U.S.C. § 1382a(a)(2). The next issue to be addressed is whether the federal definition of unearned income applies fully to the state OSS and MSS.

B. *OSS Calculation*

■ OSS is computed as the difference between the state's minimum income level and the total of the recipient's federal countable income (FCI) and the recipient's actual federal SSI grant. This calculation is the target of many of plaintiffs' arguments, all designed to convince the court that state countable income (SCI), not FCI, should be used to calculate OSS.[6] Plaintiffs urge that the statutory language itself requires that SCI be used in computing OSS, or alternatively, that there are constitutional impediments that preclude FCI from governing calculation of OSS. This latter contention is discussed along with plaintiffs' other constitutional arguments in section V., *infra.*

After taking an exhaustive look at the challenged statutes, the court concludes that neither logic, legislative history, nor a plain reading of the relevant statutes and regulations supports plaintiffs' construction of the statutory language.

OSS is provided for in 42 U.S.C. § 1382e, and is enacted by New York in Social Services Law § 209. The federal statute places few restrictions on the type of optional program that a state may adopt; § 1382e provides that an individual eligible for SSI is also eligible for OSS, § 1382e(b)(1), and allows the secretary and the state to agree upon

> such other rules with respect to eligibility for or amount of the supplementary payments, and such procedural or other general administrative provisions, as the secretary finds necessary * * * to achieve efficient and effective administration of both the program which he conducts under this subchapter and the optional state supplement. 42 U.S.C. § 1382e(b)(2).

The statute further provides that:

> Any State (or political subdivision), in determining the eligibility of any individual for supplementary payments * * *

---

**6.** This argument is at the core of plaintiffs' case. Because SCI rules do not charge a recipient with in-kind income and FCI rules do, the recipient would benefit to the extent of in-kind income countable under federal rules whenever SCI rather than FCI rules could be used.

may disregard amounts of earned and unearned income in addition to other amounts which it is required or permitted to disregard under this section in determining such eligibility, and shall include a provision specifying such income that will be disregarded, if any. 42 U.S.C. § 1382e(c)(2).

Thus, while the statute authorizing OSS permits states to "disregard amounts of earned and unearned income" in addition to income disregarded under the federal criteria, the statute requires that the agreement between the federal and state governments specify any such income that will be disregarded.

The federal defendants interpret the statutory language as requiring that only federal standards be used in calculating OSS. Their argument is twofold. First, they rely upon that portion of § 1382e(b)(2), which states that the secretary shall use "such other rules with respect to eligibility" for OSS as the secretary finds necessary "to achieve efficient and effective administration" of the combined SSI/OSS program. If it were necessary to use independent eligibility criteria for OSS, the secretary would have to make two calculations for each recipient, one for the federal SSI grant and one for OSS. Such a situation is argued to result in administrative chaos and to impermissibly hamstring efficient operation of the program, in contradiction to § 1382e's mandate.

Thus, defendants' argue that the federal statute precludes the state from establishing independent eligibility criteria and embodying those criteria in the federal/state agreement; but the argument is undercut by the language of § 1382e(c)(2), which specifically permits the state to establish its own eligibility criteria so long as the federal/state agreement specifies any differences in eligibility standards the state wishes to adopt. Moreover, § 1382e(b)(2), itself, provides that the goal of efficient and effective administration is "subject to subsection (c) of this section". Read together, these statutory provisions indicate that the state is free to adopt independent eligibility criteria by allowing additional items of income to be disregarded in computing OSS, although the federal secretary has the right to refuse to administer a cumbersome procedure.

Defendants' second point concerns the meaning of the word "disregard" in § 1382e(c)(2). While the statute permits the states to "disregard [additional] amounts of earned and unearned income", defendants interpret this as referring to flat dollar amounts, not to categories of income. Again defendants press their administrative convenience argument and contend that federal/state differences in eligibility criteria would prove unworkable.

The legislative history relied upon by defendants does not support their position. The committee reports indicate only that congress expected uniform federal/state eligibility rules "in general", and acknowledge that "the Secretary could agree to a variation affecting only the State supplemental if he finds he can do so without materially increasing his costs of administration and if he finds the variation consistent with the objectives of the program and its efficient administration." H.R.Rep. 92–231, *supra,* [1972] U.S.Code & Cong. & Ad.News, at 4989, 5186. Thus, the legislative history indicates that congress did not intend hard and fast rules mandating that the state OSS be governed by federal criteria; the secretary, in his discretion, can agree to administer any state program if it is in the federal government's interest to do so.

The argument that federal/state uniformity is compelled by the federal statute is further undercut by the federal statute mandating MSS. Pub.L. 93–66, § 212(a)(3)(A), 87 Stat. 152 (1973). By requiring the states to insure that all SSI recipients "grandfathered" into the program receive a grant equal to the amount to which they were entitled under the former state programs, the federal statute necessitates that the former state eligibility criteria be used in computing MSS. Thus, a grandfathered recipient receives a grant composed of two items: the federal SSI payment (calculated using federal criteria,

including FCI rules) and the state MSS (calculated by using the former state criteria, including SCI rules). The effect of MSS is to require the state to compensate a recipient to the extent that the recipient would be entitled to a greater grant under the state's 1973 grant calculation criteria (*i.e.*, the state must supplement the federal payment so that the grandfathered recipient maintains his or her December 1973 income level). Although MSS therefore requires the secretary to make two sets of calculations for all grandfathered SSI recipients, this is the clear import of the federal statute. If the result is administrative chaos, that is, nevertheless, the result mandated under the law. At any rate, it is clear that under some circumstances, at least, Congress intended that the secretary interpret and apply whatever different eligibility rules were in effect in the 50 states prior to the effective date of SSI. Consequently, defendants' assertion that such a situation is beyond the realm of possibility loses much of its force in light of the express language of the federal statute mandating MSS.

Merely because the federal statute does not preclude the possibility that state eligibility standards *could* be used for calculating the state supplement does not mean that the federal/New York State agreement *must* or, in fact, *does* provide for state eligibility standards to be used. It is clear from the New York statutory scheme that eligibility for OSS is to be determined using the same criteria as used for the federal SSI payments.

The New York statute authorizing the state department of social services to enter into an agreement with the federal government for federal administration of OSS and MSS provides for the secretary "to administer the State's program of additional state payments, including determining the eligibility of individuals and couples for such payment." Social Services Law § 211(1). The statute further provides for the program to be administered "in accordance with the provisions of this title, regulations of the department and federal law and regulations." § 211(2).

Pursuant to the federal and state authorizing statutes, the secretary and New York State have entered into an agreement for the secretary to administer the state programs. Agreement annexed to Bushart aff. The agreement specifies that the secretary shall "make determinations of eligibility for [OSS and MSS]", art. II, ¶ A, and establish the appropriate payment level, art. I, ¶ C. The agreement further provides that the state is bound by the secretary's regulations unless the state wishes to withdraw from the agreement, art. III, ¶ H. There is nothing in the agreement (insofar as relevant here) indicating that any criteria other than those established by the federal government will govern the state programs, despite the express language of 42 U.S.C. § 1382e(c)(2) (quoted *supra*) requiring the inclusion of any such provision.

Despite the absence of specific language in the federal/state agreement, plaintiffs argue that the New York statutes establish criteria independent from the federal statute which, plaintiffs urge, should be incorporated by reference into the agreement.

New York's statute governing eligibility for state payments, § 209, provides that all of a person's "countable income" should be considered when determining eligibility for OSS. New York Social Services Law § 209(1)(a)(ii). Countable income is defined as all income, in cash or kind, "which is not excluded by federal law or regulations or by regulations of the department in determining the need of an individual for supplemental security income benefits or additional state payments * * *." § 208(6). Plaintiffs contend that because regulations governing other state grant programs do not consider in-kind income, calculation of OSS should not take into account in-kind income either; but this argument simply ignores the explicit statutory language defining countable income as including in-kind income.

Plaintiffs' reliance on regulations applicable to other state programs enacted prior to SSI is clearly misplaced. If the New York legislature intended these other regulations

to apply to OSS it would have said so. Instead, the explicit language of § 208, enacted after these other regulations had been promulgated, unequivocally states that in-kind income is countable income for SSI purposes.

Similarly misplaced is plaintiffs' reliance on § 209(2), which provides as follows:

The following amounts shall be the standard of monthly need for determining eligibility for and the amount of additional state payments, * * *

(a) * * * for an eligible individual living alone, $301.21; and for an eligible couple living alone, $436.48.

(b) * * * for an eligible individual living with others with or without in-kind income, $248.54; and for an eligible couple living with others with or without in-kind income, $387.48.

Plaintiffs' here argue that because § 209(2)(b) sets the same standard of need for the SSI category "individual living with another" regardless of whether in-kind income is provided, New York intends all recipients in that category to receive the same grant regardless of the presence or absence of in-kind income. However, the secretary and New York State have not construed the statute in this manner, nor does it appear that this was the result intended by the legislature. In another portion of their brief, plaintiffs quote from the memorandum accompanying the bill that amended § 209(2) and added the language "with or without in-kind income":

This bill amends the Social Services Law to increase the standard of need for the SSI program * * *. It would also adjust the number of variant payment levels to conform with Federal requirements by consolidating the living with others and living with others with imputed income categories. Plaintiffs' brief at 73.

Thus, it appears that the legislature merely intended to standardize the minimum income level for all recipients in the living with others category in order to mesh with the federal categories, although, as plaintiffs also point out, the federal and state categories do not entirely coincide.[7] But just because the same minimum income level applies regardless of whether in-kind income is present does not mean that in-

---

7. The state's definition of "living with others" set forth in New York Social Services Law § 209(3)(b) is broader than the federal "living in the household of another" category, 42 U.S.C. § 1382a(a)(2)(A). Thus, the state's reduced benefit level for those in the "living with others" category applies even to some recipients who are not subject to the automatic one-third reduction rule mandated for all recipients in the federal "living in the household of another" category. The Second Circuit rejected a challenge to the rationality of the state's "living with others" classification in *Termini v. Califano*, 611 F.2d 367, 369 (CA2 1979).

In *Termini*, plaintiff challenged the rationality of New York Social Services Law § 209(3), which classified a recipient as "living with others" even if the "others" were minor children. Plaintiff argued that it was irrational for his grant to be reduced when the only persons with whom he was living were dependent children. The district court held that the classification was patently irrational because it included minor children in the definition of others, in violation of the secretary's regulation prohibiting a state supplementation program from enacting any distinctions in grant levels without a rational basis.

The Second Circuit rejected the district court's conclusion that the "living with others" category was without a rational basis. The court held that "the rational basis is supplied by the commonsense proposition that individuals living with others usually have reduced per capita costs because many of their expenses are shared." 611 F.2d at 370. Moreover, after rejecting the rational basis argument on a statutory as well as a constitutional level, the court held:

Because appellee has failed to demonstrate that the statutory classifications at issue are not rationally related to a legitimate legislative objective, we find no merit in his argument that they denied him due process of law. *See Weinberger v. Salfi, supra*, 422 U.S. at 781–82, 95 S.Ct. 2457, at 2474. *Id.*

Plaintiffs also object to the payment level for those recipients characterized by the federal criteria as "living in the household of another" and by the state as "living with others". As illustrated in exhibit A to defendant Califano's memorandum, such recipients receive a total grant that is less than the state's minimum income level. However, the chart merely reflects the consequence of applying the automatic one-third reduction rule, which takes into account a recipient's in-kind income. When the in-kind income is added to the grant, the minimum income level established by the state is achieved.

kind income should not be considered when calculating a recipient's countable income in order to determine what grant the recipient ultimately is entitled to receive. If the legislature intended to depart so radically from the SSI structure set forth in the federal statutes and regulations, it is doubtful that the legislative memorandum would speak about conforming the state categories with the federal categories.

Moreover, the grant category "living alone" does not contain any reference to in-kind income, and in-kind income has been deducted from a recipient's grant since the inception of the SSI/OSS program. If the legislature intended to eradicate the in-kind income concept from OSS, it would have done so for all recipients, not just those living with others. At any rate, New York courts have not construed the statute in the manner urged by plaintiffs. *See e.g., Rosenfeld v. Blum,* 82 A.D. 559, 442 N.Y.S.2d 89 (2d Dep't 1981), *request for reargument and leave to appeal denied,* NYLJ, Oct. 30, 1981 at 14 col. 5 (holding that in-kind income for SSI purposes not dispositive for purposes of home relief program).

Finally, the fact that congress enacted Public Law 92–603, and that New York State enacted § 210, both mandating MSS, demonstrates that congress and the New York legislature were aware that the newly enacted federal eligibility standards were causing many recipients to receive lower grants than they had been receiving under the former state-run programs. If OSS were supposed to be calculated in the manner urged by plaintiffs, enactment of MSS would have been meaningless and unnecessary, because the formulae for computing both OSS and MSS would have been identical. The fact that MSS was enacted to supercede OSS for grandfathered recipients militates strongly against plaintiffs' argument that SCI should be used to determine eligibility for both OSS and MSS.

Read together, the federal and New York State statutory schemes support application of federal standards in computing OSS. The federal statute places a burden on the state to specify in the agreement any in-come disregards applicable to OSS additional to those applicable to the federal SSI computation. New York has not indicated in the agreement or in any statute or regulation an intention to use non-federal criteria in computing OSS. Absent an expressed intent on the part of the state not to use federal eligibility standards, the secretary is correct in applying federal criteria.

### C. *MSS Calculations*

■ Plaintiffs' argument that SCI rules are applicable to SSI recipients is correct insofar as the MSS calculation is concerned, and the secretary acknowledges the correctness of this position. Memorandum at 14. The secretary also acknowledges that despite the federal and state statutes and regulations mandating that SCI and not FCI be used to calculate MSS, erroneous MSS calculations were widespread, at least initially. The federal defendants explain the initial confusion as resulting from "inherent administrative difficulties in a system which requires the federal government to implement state rules and regulations in effect in December of 1973." *Bernzweig aff.,* ¶ 12.

Once the magnitude of the error became clear, the secretary identified categories of recipients with the highest expected error rates and apparently undertook to recompute over 9,500 grant calculations. While the initial misapplication of federal and state laws certainly cannot be condoned, the secretary appears to have made a good faith effort to remedy the situation, and the court has no reason not to assume that the erroneous calculations have since been corrected.

Moreover, although many MSS recipients were prejudiced because of the faulty calculations, none was any worse off than a similarly situated OSS recipient who, because he or she was not "grandfathered" into SSI, was ineligible for the higher benefit level under MSS.

In summary of this point, having examined the relevant federal and state statutes and regulations, the court concludes:

(1) The secretary is correct in applying FCI rules to determine eligibility for and benefit level under OSS. The federal statute indicates that federal standards will govern absent an agreement to the contrary between the secretary and the state; the New York Social Services Law also states that the secretary is to apply federal criteria when administering OSS. Plaintiffs' argument that the statutes and legislative intent should be interpreted as requiring state criteria to control is without support.

(2) As all parties now recognize, MSS must be calculated by taking into account SCI rules as they existed in December, 1973. The relevant federal and state provisions clearly indicate that New York State's former eligibility standards govern MSS, and, in fact, the explicit legislative rationale for MSS is to require the state to supplement an SSI recipient's grant to insure that no recipient's standards are lowered by being transferred to the SSI program from the former state-run programs.

Having considered the arguments urged by plaintiffs in support of their interpretation of the statutory framework, the court concludes that plaintiffs' arguments are without merit. Plaintiffs' challenges to the secretary's construction and application of the eligibility criteria for OSS accordingly fail.

## V. CONSTITUTIONALITY OF SSI PROGRAM

When plaintiffs originally argued that certain aspects of the SSI program were unconstitutional, they suggested that the court should apply a more rigorous standard of review than the traditional rational relationship test. Plaintiffs relied in part on lower court decisions implying that a higher standard of review was required when examining legislation affecting the aged, blind or disabled, and in part on what plaintiffs termed the Supreme Court's silence on the subject. Defendants maintain that the challenged provisions must be upheld as

long as they are rationally related to legitimate legislative goals. *See Usher v. Schweiker,* 666 F.2d 652 (CA1 1981); *Kimmes v. Harris,* 647 F.2d 1028 (CA10 1981); *Kollett v. Harris,* 619 F.2d 134 (CA1 1980); *Antonioli v. Harris,* 624 F.2d 78 (CA9 1980). *Cf. Nunemaker v. Harris,* No. 79–170 (Md Pa Dec. 2, 1980).

After reviewing the recent Supreme Court and Second Circuit cases in this area, the court agrees with defendants that the appropriate standard for review of the challenged SSI provisions is an examination of whether the provisions are rationally related to valid legislative objectives. While the rational basis test is "not a toothless one", a court may "not substitute [its] personal notion of good public policy for those of Congress", *Schweiker v. Wilson,* 450 U.S. 221, 233, 101 S.Ct. 1074, 1082, 67 L.Ed.2d 186 (1981). Moreover, the Supreme Court "has granted a 'strong presumption of constitutionality' to legislation conferring monetary benefits", *id.* 101 S.Ct. at 1085 (quoting *Mathews v. DeCastro,* 429 U.S. 181, 97 S.Ct. 431, 50 L.Ed.2d 389 (1976)). *See also Califano v. Aznavorian,* 439 U.S. 170, 99 S.Ct. 471, 58 L.Ed.2d 435 (1978); *Califano v. Jobst,* 434 U.S. 47, 98 S.Ct. 95, 54 L.Ed.2d 228 (1977); *Califano v. Goldfarb,* 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977); *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *Termini v. Califano,* 611 F.2d 367, 369 (1979); *Ballard v. Rockville Centre Housing Authority,* 605 F.2d 1283 (CA2 1979). With this framework in mind, the court will proceed to a discussion of plaintiffs' principal complaints.

### A. *Automatic One-Third Reduction Rule*

The newly revised regulations [8] have two rules for valuing in-kind income. 20 CFR § 416.1130. An automatic one-third reduction rule applies to all recipients "living in another's household" and receiving support and maintenance from that person; a pre-

---

**8.** The regulations have been renumbered and reworded since they were referred to in the parties' memoranda. None of the parties have

brought to the court's attention any significant changes in the substance of the regulations.

sumed value rule applies a rebuttable one-third presumption to all other instances where in-kind support or maintenance is received. Plaintiffs object to both rules as being irrational, and further contend that the rules constitute unconstitutional, irrebuttable presumptions, either on the face of the regulation or as actually applied.

■ Application of the automatic one-third reduction rule is carefully circumscribed in the statute, 42 U.S.C. § 1382a, and the implementing regulations, 20 CFR § 416.1131–.1133 (1981). Thus, a recipient is not categorized as "living in another's household" unless certain indicia are present. The person with whom the recipient is living cannot be a spouse, minor child, or a recipient of public aid. Nor will a recipient be considered living in another's household if he or she has an ownership interest or is liable for any portion of the rent. Moreover, if the recipient is paying a pro rata share of the household expenses, the recipient is not "living in another's household". The regulations also make clear that living in a hotel or boarding home is not living in another's household. Other exceptions to the category are set forth in § 416.1132–.1133. Finally, even if none of the exceptions apply and a recipient is therefore deemed to be "living in another's household", unless the person in whose household the SSI recipient is living also provides both food and shelter to the recipient, the automatic one-third reduction rule does not apply.

The secretary justifies the automatic one-third reduction rule as reflecting a rational legislative judgment that SSI recipients living with relatives or friends who are providing in-kind support and maintenance have a lesser need for governmental assistance than other recipients living without such aid. In lieu of calculating a precise dollar amount for the value of the in-kind income received, the automatic one-third cut-off was chosen. The congressional committee report explains:

> In recognition of the practical problems that would be encountered in determining the value of room and board for people who live in the household of a friend or relative, the bill would provide specific rules for use in these situations. Under the bill, the value of room and board, regardless of whether any payment was made for room and board, would be assumed to be equal to one-third of the applicable benefit standard. H.R.Rep. No. 92–231, *supra,* [1972] U.S.Code Cong. & Ad.News at 5138.

Plaintiffs assert that the assumptions implicit in the automatic one-third reduction rule are not universally true. For example, plaintiffs Gibbs, Dorfman, Garcia, Torres, Rogers, Leone, and Frank all contribute to the expenses in the household in which they are living. However, although none contributes a pro rata share, each does receive food and shelter from the household, and thus is classified as living in the household of another. Plaintiffs assert that in some or all of these situations plaintiffs are contributing their actual share of the household expenses despite the fact that the payment is less than a pro rata share. Plaintiffs explain that elderly persons often eat less and have less overall expenses than younger persons.

No doubt, at least one plaintiff can demonstrate that the presumption inherent in the automatic one-third reduction rule is rebutted in his or her individual case. Nevertheless, it cannot be said that it was irrational for congress to assume that individuals living with and receiving support and maintenance from others have a lesser need for governmental aid than do persons not in that legislative category. Moreover, "it is unfortunate, but not dispositive, that this scheme has produced a harsh result in [some plaintiffs' cases]". *Termini v. Califano,* 611 F.2d 367, 370 (CA2 1979).

The secretary points out that the one-third reduction rule may also work against the secretary in many instances. For example, it is easy to imagine a situation where a recipient living with a caring friend or relative receives far more than one-third of the SSI grant in food and shelter even though the statute and regulations put a cap of one-third on a reduction

for in-kind income. The statutory maximum apparently reflects a legislative judgment that once a person meets the eligibility criteria for the SSI program, some cash payment is in order.

As discussed above, it is beyond the domain of this court to assess whether the automatic reduction rule is a wise exercise of legislative power:

[T]his Court properly exercises only a limited review power over Congress, the appropriate representative body through which the public makes democratic choices among alternative solutions to social and economic problems. *Schweiker v. Wilson, supra,* 101 S.Ct. at 1080 (citations omitted).

The Supreme Court has also noted:

Governmental decisions to improve the general public welfare in one way and not another are "not confided to the courts. The discretion belongs to Congress, unless the choice is clearly wrong, a display of arbitrary power, not an exercise of judgment." *Helvering v. Davis,* 301 US 619, 640, 57 SCt 904, 908 [81 L.Ed. 1307]. In enacting legislation of this kind a government does not deny equal protection "merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis', it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'" *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161 [25 L.Ed.2d 491]. *Mathews v. DeCastro,* 429 U.S. 181, 185, 97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976).

After considering plaintiffs' objections to the automatic one-third reduction rule in light of the governing criteria, the court concludes that the rule is not irrational or without a reasonable basis. Plaintiffs' challenges to the constitutionality of the rule accordingly fail.

B. *Presumed Value Rule*

■ The rebuttable one-third reduction rule, referred to in the regulations as the "presumed value" rule, is triggered when-

ever countable in-kind support and maintenance is received and the automatic one-third reduction rule discussed above does not apply. In contrast to the automatic one-third reduction rule, the presumed value rule presents an opportunity to an SSI recipient to rebut the inference that the in-kind income received is worth less than one-third of his or her SSI grant. The regulation states that the one-third figure was chosen because no recipient's grant will be reduced by more than that amount to take into account unearned income. 20 CFR § 416.1140–.1141 (1981).

Plaintiffs' main objection to the presumed value rule relies on the premise that in practice the one-third presumption becomes irrebuttable. Plaintiffs reason that once a recipient's grant is reduced by the amount of in-kind income he or she receives, it then becomes necessary for the recipient to seek additional support from a relative or friend to compensate for the reduced SSI check. This results in a further reduction in the SSI grant, until at some point the one-third reduction level is reached.

The fallacy in this argument lies in the initial assumption that the SSI grant level is established after consideration of a particular recipient's needs. However, as discussed more fully in section II, *supra,* SSI is a "flat grant" program with a nationwide minimum income level established without regard to a particular recipient's needs. Once other means are available to enable an SSI recipient to reach the minimum income level, the grant is reduced regardless of whether in fact the recipient actually has sufficient resources to meet his or her real or perceived needs. Thus, plaintiffs' real complaint is that the minimum income level is insufficient to meet their needs, thereby forcing them to seek other means of support from family or friends.

The secretary responds to plaintiffs' arguments by noting that at least two of the proposed plaintiffs in this action themselves have rebutted the "irrebuttable" presumption and, therefore, have their grants reduced by less than one-third even though

in-kind income is present. Moreover, the issue is not whether a recipient would prefer to receive an SSI check rather than in-kind income from a friend, relative or charity. Congressional intent in enacting the SSI program was to ensure that a minimum income level was achieved by all eligible recipients, regardless of whether that level was achieved by virtue of an SSI grant or income from some other source. Had congress intended that everyone anyone eligible for the program receive a minimum *cash* grant, the definition of countable income discussed previously would not have been enacted. The court rejects the implication in plaintiffs' argument that there is some constitutional entitlement to a specific cash grant; the only issue properly before the court is whether the decision to place a presumed value on a recipient's in-kind income is rationally related to a valid legislative goal. *Schweiker v. Wilson, supra; Mathews v. DeCastro, supra; Termini v. Califano, supra,* and cases cited above.

Viewed in this light, it is clear that plaintiffs' arguments must fail. Congress has enacted a program designed to ensure a nationwide minimum income level, and has decided that an individual already receiving income from other sources should have a grant reduced by the amount of other income available. When earned income is available, it is relatively easy from an administrative viewpoint to calculate precisely the dollar amount of the earned income received. However, when in-kind income is present it would become an administrative nightmare to place a price tag on each item of food, clothing or shelter. The regulation has adopted a streamlined approach of valuing all in-kind income at one-third of the grant level unless the recipient comes forward with information rebutting that presumption. Congress specified in 42 U.S.C. § 1382a(a)(2)(A) that one-third is the maximum amount by which a grant should be reduced to take into account in-kind income, and the regulation presumes that the one-third maximum amount is reached in every case where in-kind income is present. If

the presumption is erroneous, all the recipient need demonstrate is that the actual value is less.[9]

For these reasons, the court concludes that both the automatic one-third reduction and the presumed value rules are rationally related to the legislative goals they were enacted to achieve and, thus, must be upheld by this court.

## C. New York State Constitutional Arguments

The next issue concerns plaintiffs' contention that they, as SSI recipients, are treated unequally compared to other public assistance recipients in New York State. Specifically, plaintiffs contend that they are deprived of equal protection under the law because some home relief recipients are entitled to and receive higher cash benefits than SSI program recipients. This argument relies heavily on the New York State Court of Appeals decision in *Lee v. Smith*, 43 N.Y.2d 453, 402 N.Y.S.2d 351, 373 N.E.2d 247 (1977).

Prior to the *Lee* decision, SSI recipients were precluded from applying for additional grants from the home relief program by virtue of New York Social Services Law § 158(a), which sets forth the eligibility criteria for the home relief program. The statute provides that:

A person who is receiving federal supplemental security income payments and/or additional state payments shall not be eligible for home relief. An applicant for home relief who reasonably appears to meet the criteria for eligibility for federal supplemental security income payments shall be required, as a condition of eligibility for home relief, to apply for such payments * * *.

Thus, regardless of whether an individual might receive a higher grant level under the home relief program, the individual was required to apply for SSI benefits, and, if the SSI eligibility criteria were met, was precluded from receiving home relief benefits.

---

**9.** One of the few contentions plaintiffs do not advance in this lawsuit is that the secretary

does not provide a recipient an opportunity for a hearing to rebut the one-third presumption.

In *Lee,* plaintiffs were SSI recipients who applied for and were denied home relief benefits. The New York State Court of Appeals upheld the constitutionality of the SSI program, noting that a legitimate state interest was furthered by the federal government's administration of the SSI program. The Court of Appeals also recognized that separate eligibility criteria were established by the federal government and accepted by New York State in return for having the federal government administer the state and federal portions of the SSI payment. However, the Court of Appeals held that it was irrational for the New York State legislature to prevent the aged, disabled and blind persons eligible for SSI from also applying for home relief if it would result in a higher grant. The court noted:

> Classification of the aged, disabled and blind into a separate public assistance category with needs different from other needy persons is not unusual, nor is it usually considered discriminatory. Generally, however, the classification inures to their benefit and is sustained on the theory that it is not irrational for the State to conclude that the aged and disabled are "least able * * * to bear the hardships of an inadequate standard of living". 43 N.Y.2d at 460, 402 N.Y.S.2d at 355, 373 N.E.2d at 251 (citation omitted).

However, § 158 of the Social Services Law was designed to preclude the aged, disabled and blind from receiving additional state benefits that all other citizens were entitled to receive, even though many of these other recipients received income from other sources. 43 N.Y.2d at 462, 402 N.Y.S.2d at 356, 373 N.E.2d at 252. The court, therefore, concluded that the state's desire to attain administrative efficiency "by irrevocably assigning the aged, disabled and blind to the Federal program without recourse to State aid", could not withstand constitutional scrutiny. 43 N.Y.2d at 463, 402 N.Y. S.2d at 356, 373 N.E.2d at 252.

Following the Court of Appeals' decision in *Lee,* the state department of social services issued an administrative directive to all of its branch offices advising them that "no application for home relief by or on behalf of an SSI recipient may be denied solely because that individual is in receipt of Supplemental Security Income benefits." 77 ADM 138, Ex. B to Bushart aff. However, the administrative directive explained that all items considered to be income for SSI purposes should also be considered income for home relief program purposes. Plaintiffs contend that it is only when an SSI's home relief application is evaluated that in-kind income is taken into account, and that the state defendants have, therefore, effectively thwarted the thrust of the *Lee* decision.

The New York courts have had occasion to review several challenges to the department of social services method of computing home relief benefits for SSI recipients following the *Lee* decision. *E.g., Wasservogel v. Blum,* 54 N.Y.2d 100, 444 N.Y.S.2d 612, 429 N.E.2d 131 (N.Y.Ct.App.1981); *Rosenfeld v. Blum,* 82 A.D. 559, 442 N.Y.S.2d 89 (2d Dep't 1981), *request for reargument and leave to appeal denied,* NYLJ, Oct. 30, 1981 at 14 col. 5. *See also Delmar v. Blum,* 53 N.Y.2d 105, 440 N.Y.S.2d 604, 423 N.E.2d 27 (1981).

Plaintiffs in this case rely in part on these New York cases to support their argument that one key New York regulation governing the home relief program has been ignored by the state when calculating SSI recipients' home relief grants. This regulation provides that in assessing a home relief application:

> All income and resources of an applicant * * * shall be considered in order to determine its availability; and when determined to be available, after policies governing the exemption and disregard of such income and resources have been applied, shall be applied towards meeting the needs of the individual. 18 NYCRR § 352.16

Rather than recalculating the "income and resources available" to a home relief applicant who is currently receiving SSI, plaintiffs contend that the state department of

social services merely assumes that the federal in-kind income calculation applies equally to the home relief calculation. Such an assumption by the state defendants is argued to conflict with *Lee.*

In *Rosenfeld v. Blum, supra,* petitioner's SSI check had been reduced by the amount of in-kind income attributed to her by operation of the federal regulations discussed previously. Petitioner then applied for benefits under the New York State home relief program, whereupon the state department of social services adopted the SSI in-kind income figure as representing income "actually available" to petitioner within the meaning of 18 NYCRR § 352.16. The Appellate Division reversed the state commissioner's determination, holding that "the automatic deduction of certain 'in-kind' income, as defined by the Social Security Administration and adopted wholesale by the State Commissioner, impermissibly attributes such income to the petitioner." 442 N.Y.S.2d at 90.

The court then explained that the commissioner could not adopt the federal determination of in-kind income absent a showing that the in-kind income was actually available to meet the particular needs that the state home relief program was designed to meet:

> The lack of any evidentiary basis to make a reasoned analysis of the financial situation of petitioner compels the conclusion that the State Commissioner can not use the SSI figure as an administrative short-cut to her determination of public assistance needs. The Commissioner's duty is to establish upon substantial evidence the composition of the petitioner's household, the precise nature and sources

of her support, and the intentions of those persons, if any, who directly and indirectly support her or the household.

> This matter must therefore be remitted to the State Commissioner for a redetermination based upon a record meeting such requirements. 442 N.Y.S.2d at 96.

More recently, in *Wasservogel v. Blum, supra,* the New York State Court of Appeals emphasized that the express language of 18 NYCRR § 352 mandated that only income actually available to meet "needs", as that term is used within the context of the home relief program, could be considered as income available for purposes of the state program. The Court of Appeals reached this conclusion on statutory construction grounds and did not address the equal protection argument raised by the petitioner.

■ After analyzing plaintiffs' arguments in this case in light of the New York state courts' construction of the statutes and regulations governing the home relief program, it is unnecessary and unwarranted for this court to reach the potential constitutional issues raised by plaintiffs. Plaintiffs ask the court to conclude that under *Lee, supra,* it is unconstitutional for the state to adopt wholesale the federal in-kind income figure and to use that figure as "income actually available" for purposes of the state home relief program. Even if plaintiffs are correct that the state's use of this "administrative shortcut" would violate the federal constitution, and even if plaintiffs are further correct in stating that the state has relied on the federal figure in the past, the state courts have now held that this approach is not permissible under New York law.[10] In particular, the state courts

---

10. In their letters to the court and at the oral argument on these motions plaintiffs' counsel acknowledged the "lurking eleventh amendment" issue presented if the court should decide that state and not federal dollars have wrongfully been withheld from plaintiffs. *E.g.,* Robert letter dated August 31, 1981. Plaintiffs are correct that recent Supreme Court cases would seem to bar retroactive monetary relief. *Florida Dep't of Health & Rehabilitative Services,* 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981); *Edelman v. Jordan,* 415 U.S. 651,

94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Thus, even if any of these plaintiffs were able to demonstrate that his or her home relief grant had been wrongly calculated in the past (an issue not presently before this court) it is doubtful whether retroactive payments are potentially available. The court rejects plaintiffs' additional argument that the state's interpretation of the statutes and regulations governing the home relief program proves that the SSI calculations are also based on erroneous criteria. As discussed in section IV–B, OSS Calcu-

do not permit the state commissioner to merely assume that the federal in-kind income figure is income actually available to a home relief recipient.

*Wasservogel v. Blum, supra,* and the cases discussed therein, indicate that the New York State Court of Appeals has in the past precluded the state commissioner from broadening the term "available income" to include items not actually shown by the evidence to be available to a home relief recipient. Thus, the Second Department's decision in *Rosenfeld v. Blum, supra,* requiring the commissioner to demonstrate the existence of available income rather than assuming its existence based on SSI calculations, is a logical extension of the highest state court's interpretation of the state statutes. Any plaintiff wishing to challenge the state's assessment of available income has the right under state law to request a hearing to do so. The constitutionality of the state commissioner's calculation of home relief benefits is, therefore, a moot issue since the state has conceded that as a matter of statutory construction the state cannot administer home relief in the manner objected to by plaintiffs.

Moreover, the Assistant Attorney General assigned to this action has advised the court that the state has agreed to revise its administrative directive to conform to the New York court's decision in *Rosenfeld, supra,* and related cases. Jacoby letter dated November 23, 1981. Thus, plaintiffs have in essence achieved their objective, insofar as their arguments in this case focus upon the calculation of home relief benefits. As discussed below, however, the court rejects plaintiffs' argument that the same formulae must be used to calculate both home relief and SSI benefits.

In their initial papers and in subsequent letters and memoranda filed with the court, plaintiffs advance the claim that *Lee v. Smith, supra,* and subsequent cases invalidating the state's calculation of home relief grants have implications for calculation of the SSI benefits as well. Plaintiffs contend that if home relief benefits in the past have been miscalculated, so too have OSS calculations been in error. This result does not follow, since home relief and SSI are different programs administered by different governments with different objectives. Significantly, the federal program provides benefits based only on the applicable minimum income level, without regard for an individual recipient's particular circumstances. Conversely, home relief is a need-based program that provides for adjustments in grant level depending upon a recipient's actual needs.

Moreover, the state courts have made clear that there is no impediment to any individual applying for home relief benefits merely because he or she already receives SSI benefits. *Lee v. Smith, supra.* No constitutional issue is presented by requiring plaintiffs to seek relief from two agencies instead of one, and plaintiffs' arguments addressed to the efficiency of this procedure are best directed to the legislature.

Plaintiffs also argued that 77 ADM 138 should be invalidated by this court because the directive had been improperly promulgated, in violation of the state constitution and the state administrative procedure act. Plaintiffs ask the court to exercise its pendent jurisdiction to determine whether this administrative directive is a rule or regulation within the meaning of the New York administrative procedure act, and if so, whether the proper procedures were followed in its promulgation.[11] The court

---

lations, the method currently used to calculate OSS benefits is not erroneous.

11. Plaintiffs cite *Morabito v. Blum,* 528 F.Supp. 252 (S.D.N.Y.1981) in support of their contention that 77 ADM 138 has been improperly promulgated and thus is invalid. In *Morabito,* Judge Ward held that Commissioner Blum acted improperly in terminating a federal/state agreement governing the medicaid program.

This decision was based on two grounds: that in violation of federal regulations Blum had failed to consult with the New York Advisory Committee prior to her decision; and that Blum had violated federal publication and notice requirements by not publishing the details of the termination. Although plaintiffs had argued that Blum also violated state notice requirements, the court did not reach that issue.

need not determine whether it would be an appropriate exercise of pendent jurisdiction to reach this issue since the New York courts have already held invalid on other grounds the administrative directive. Moreover, as discussed above, the state is currently revising the directive to conform to the New York courts' decisions.

## VI. RIGHT TO PRIVACY VIOLATIONS

Plaintiffs contend that defendants' policies in policing the SSI program violate constitutional and statutory privacy rights. Three main arguments are advanced: (A) that certain policies of the SSI program inhibit familial relationships; (B) that the questions asked of potential SSI recipients and their relatives are so intimate as to violate a constitutional right to privacy; and (C) that defendants have violated numerous provisions of the Privacy Act because of the manner in which information is elicited from plaintiffs. These contentions are addressed below.

### A. *Inhibitions on Family Relationships*

As discussed earlier, section II, *supra,* the federal statute and regulations exempt specified items from inclusion in a recipient's in-kind income. For example, subparagraph (b)(6) of 42 U.S.C. § 1382a excludes from federal countable income, assistance furnished under a state public assistance program and (b)(7) excludes income furnished as an educational grant or scholarship. Additionally, 20 CFR § 416.1100 *et seq.* lists numerous other exclusions from earned and unearned income that will not result in a lesser grant. It is plaintiffs' contention that the statute and regulations work unfairly to reduce a recipient's grant when that recipient receives in-kind income from a caring family member or friend, because the recipient's grant would not be reduced if the source of the recipient's in-kind income were another governmental program. Such a result is argued to infringe the constitutionally protected "zone

of privacy" recognized by the Supreme Court in *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), and the right to associate with one's family members recognized in *Moore v. City of East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) and other cases.

The contention that congress and/or the secretary inhibits the family relationships of SSI recipients is frivolous. Merely because the federal regulations do not reduce a recipient's grant if the recipient happens to be eligible for an additional state public welfare grant, while reducing the same recipient's grant if the individual is the recipient of in-kind income from a family member, does not bring this case within *Moore v. City of East Cleveland, supra,* where the challenged regulation directly prohibited a grandmother and her grandson from living together. Here, the challenged statutes and regulations on their face apply to income furnished from many sources, and not only to income furnished by family members. The exemptions from the general inclusion rule are not "suspect" within the meaning of the equal protection clause, nor do the exemptions result in a deprivation of any fundamental right. There is no invidious distinction between those items that are included in income and those that are not.

Moreover, plaintiffs' characterization of the regulations as "penalizing" a recipient for receiving in-kind income is misleading. Given the goal of the SSI program—to ensure that all aged, blind and disabled individuals attain a federally established minimum income level—the regulations recognize that an individual without income from other sources will need a larger grant to reach the minimum level than an individual with such other income. This is not an illogical means of allocating scarce government resources. The court has previously noted that the challenged regulations bear a rational relationship to a legitimate legislative goal and do not violate either the due process or equal protection clauses. *See also Usher v. Schweiker, supra.*

Whether *Morabito* supports plaintiffs' argument in this case is an issue that this court

need not reach in any event.

## B. *Invasion of SSI Recipients' Privacy Rights*

■ Plaintiffs contend that the manner in which the Social Security Administration elicits information from potential SSI recipients and their families is so intrusive as to violate their right to privacy. As an example, plaintiffs refer to the evidence adduced at plaintiff Glasgold's hearing before the Administrative Law Judge (ALJ). The ALJ extensively questioned Glasgold's son and son-in-law to discover whether they or any other members of Glasgold's family contributed any food or clothing to Glasgold. *See* Robert aff. ¶ 215. While the court agrees that the questions asked of Glasgold's children were intrusive and, at times, embarrassing, consideration must be given to the context in which the questions were asked.

Plaintiff Glasgold was notified that her SSI benefits would be decreased because her son and son-in-law were contributing food to her, and the food contributions combined with other income she was receiving made her ineligible for SSI benefits. The testimony showed that one son contributed approximately $1.50 per month in food; the son-in-law had previously signed a statement indicating that he and his wife provided between $10 and $14 per week in food. At the hearing, the son-in-law attempted to lower his estimate of food that he contributed, but the ALJ found that $10 was an accurate estimate. This finding appears to be supported by substantial evidence. Thus, it was only after plaintiff had sought and was receiving SSI benefits, and after the Social Security Administration became aware that she was receiving food from other sources and, accordingly, reduced her grant, that Glasgold's children were put through the rather humiliating experience of answering questions about any support given to their mother. Under these circumstances, where plaintiff had requested a hearing to contest the discontinuance of her benefits, the ALJ's action in inquiring into

precisely how the in-kind income figures had been derived, is more understandable.[12]

The court concludes that once the Social Security Administration receives information that an SSI recipient is receiving income from another source, it is neither unreasonable nor a violation of the recipient's or the source's constitutional rights to be asked questions about whether the in-kind income is, in fact, provided. A recipient's resources and income are facts made relevant by a constitutional statute that the secretary is charged by law with enforcing. It cannot be unconstitutional nor a violation of the Privacy Act for the secretary in determining those facts to inquire from those who are often the most knowledgeable sources of the relevant information.

## C. *Privacy Act Violations*

■ Plaintiffs contend that the Social Security Administration's method of compiling information from potential recipients and their families does not comport with provisions of the privacy act. The relevant provisions are:

> Each agency that maintains a system of records shall—
>
> (2) collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits, and privileges under Federal programs;
>
> (3) inform each individual whom it asks to supply information, on the form which it uses to collect the information or on a separate form that can be retained by the individual—
>
> (A) the authority * * * which authorizes the solicitation of the information and whether disclosure of such information is mandatory or voluntary;
>
> (B) the principal purpose or purposes for which the information is intended to be used;

12. Whether it was inappropriate or misleading for the Social Security Administration to approach plaintiff's relatives in the first place and ask them for a written statement explaining

any aid given to Glasgold or whether this procedure, in fact, violates the privacy act as plaintiffs contend, is discussed below.

(C) the routine uses which may be made of the information, as published pursuant to paragraph (4)(D) [relating to publication in the Federal Register] of this subsection; and

(D) the effects on him, if any, of not providing all or any part of the requested information. 5 U.S.C. § 552a(e).

The remedy section of the Privacy Act provides that:

Whenever any agency * * * (D) fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual, the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection. 5 U.S.C. § 552a(g)(1).

Plaintiffs contend that the Social Security Administration and its agents have elicited personal information from plaintiffs and their families without adequately informing them of the purposes for which the information is sought, the manner in which it may be used, and any penalties for non-disclosure.

In addition to their disagreement with plaintiffs' contentions, defendants first assert that plaintiffs lack standing to sue under the Privacy Act because even if the act is violated, there is no "adverse effect" as required under 5 U.S.C. § 552a(g)(1). *See Harper v. United States,* 423 F.Supp. 192 (D.S.C.1976). Defendants reason that it is not the information-gathering that leads to a reduction in benefits, but the fact that the truth becomes known to the Social Security Administration that results in a reduction. Plaintiffs attempt to circumvent the standing issue by arguing that the forms are designed to elicit erroneous information since the information-givers do not realize the uses to which the information will be put.

Even if plaintiffs have standing to sue, defendants contend that the forms given to SSI applicants and their families fully comply with the Privacy Act provisions. The form required to be completed by an SSI

recipient, Ex. A–143 to Bernzweig aff., provides as follows:

The information obtained on this form is used to develop and decide if an individual applying for benefits is eligible. No supplemental security income or State supplement, if applicable, may be paid unless a completed application form has been received (42 USC § 1383(e); 20 CFR 416.300). The routine uses for the information obtained are fully explained and published annually in the Federal Register. The Social Security Administration will further explain these uses upon request. Form SSA–8001 and 8002.

The form goes on to elicit information about an applicant's living arrangements, medical background, previous applications for benefits, employment history, assets, etc. The portion of the form quoted above states the statutory authority for the form, 5 U.S.C. § 552a(e)(3)(A); the purpose for which the information is intended to be used (SSI benefits), § 552a(e)(3)(B); a brief description of the uses that may be made of the information and the place where the full details of that information are published, § 552a(e)(3)(C); and the potential effects if the information is not provided (no benefits available), § 552a(e)(3)(D). Plaintiffs apparently would like the explanation on the form to fully apprise the SSI applicant of all of the rules and regulations governing the SSI program. However, it is obviously impossible for one small form to state all of the rules and regulations governing the SSI program. No doubt, this is why the form informs the applicant that further information can be obtained from the Social Security Administration.

Although the exact amount of information that an agency should set forth on its application form may not be clearly set forth in the statute, plaintiffs have not brought any authority to the court's attention that would indicate the current form used is insufficient. Moreover, it is unlikely that someone who has sought out an SSI form in order to apply for benefits does not have access to additional information about how the program operates. Under these

circumstances, the court concludes that the SSI applicant who completes the application form receives information sufficient to satisfy the Privacy Act standards. *See generally* J. O'Reilly, *Federal Information Disclosure* at 21–1 *et seq.*

Plaintiffs also advance their Privacy Act arguments in relation to the form entitled "Persons Reporting Income and/or Resources", Ex. A–151 to Bernsweig aff., and contend that relatives and friends of SSI recipients are induced to give personal information without a sufficient explanation of why the information is required. This form also provides a brief explanation of its purpose. The relevant portion provides as follows:

> If the statement is made by AND with respect to an individual who is not filing for or receiving benefits but whose income or income and resources affects the eligibility of another individual for benefits, this statement is authorized by law, (42 U.S.C. § 1382c(f) and 1383(e); 20 CFR 416.300 and 416.705). While you are not required to respond, your cooperation is needed to make the determination of the eligibility of another individual accurate and timely. The routine uses for the information obtained are fully explained and published annually in the Federal Register. The Social Security Administration will further explain these uses upon request. Form SSA–8010.

The form elicits information about the person's income and resources, employment record, assets, etc. Again, the form indicates the governing statutes, the principal purpose for which the information is sought, the uses that may be made of the information, and the source where all of the details are published. 5 U.S.C. § 552a(e)(3). In contrast to the applicant's form, discussed above, the form for relatives and friends indicates that the information furnished is on a voluntary basis and is not required by any statute. 5 U.S.C. § 552a(e)(3)(A).

Plaintiffs' arguments that neither of these forms complies with the Privacy Act seem to ignore the fact that both of the challenged forms do provide at least some minimal amount of information to the information-giver and additionally inform the person that more information is available from the Social Security Administration. While it may be that some applicants do not understand fully the reasons why they are required or asked to fill out the forms, it is doubtful that a long and complicated explanation would further the understanding of anyone. The SSI statutes and regulations take up several hundred pages in the law books; it would be unrealistic to expect that there is any feasible means of fully apprising every SSI applicant and his or her family of all of the particular rules and regulations that may affect the calculation of a grant. If the explanation on the forms was longer than what now appears, plaintiffs might well argue that the forms were incomprehensible to the average lay person. After considering the arguments raised, the court concludes that the challenged forms comply with the Privacy Act provisions.

RE: Ruppert v. HHS

Plaintiff has amended his complaint to request a declaratory judgment requiring defendant to reform his procedures to comply with the Privacy Act. Specifically he wants defendant to fully inform claimants of the purpose of the information requested, the specific definitions used by Social Security and the effect of answers on benefit amounts. In Glasgold v. HHS Judge Pratt rules that HHS was not required to provide written explanations of its definitions etc. Therefore, plaintiff is currently requesting that oral explanations be required instead (whether only upon request or not is not clear). Plaintiffs assertion that a distinction should be made between oral and written information, such that one is statutorily required while the other is not, should be adequately briefed before a decision is made.

## VII. CONCLUSION

During the pendency of these actions, numerous memoranda, letters, excerpts from cases, magazine and newspaper articles, and other relevant materials have been supplied to the court by the parties. It has been a burdensome task for the court to

sort out and attempt to deal with the major arguments presented; undoubtedly, some issues have not been addressed as thoroughly as they might have been had they been presented more concisely and with more clarity. However, the court has carefully and conscientiously plowed through all of the materials available and tried to consider all of the points made by the parties.

For all of the reasons discussed herein, the court concludes that defendants are entitled to summary judgment in their favor dismissing all of the complaints, except for the seven actions the government acknowledges should be remanded.[13] These cases are remanded for any proceedings consistent with this decision. In light of this result, the motions for class certification, to consolidate all of the actions, for additional plaintiffs to intervene, to file and serve an amended complaint, and to add additional state and county defendants to these actions are all denied. The clerk shall enter judgment in each action dismissing the complaint without costs.

SO ORDERED.

---

**13.** The cases are: *Dorfman v. Secretary,* 78 C 1109; *Thompson v. Secretary,* 78 C 1584; *Coppola v. Secretary,* 78 C 1792; *Torres v. Secretary,* 78 C 1913; *Coombes v. Secretary,* 77 C 2485; *Glasgold v. Secretary,* 77 C 1363; and *Greenbaum v. Secretary,* 77 C 1441.